175 A.3d 932

A.T., AN INFANT BY HER MOTHER AND NATURAL GUARDIAN, T.T., AND T.T., INDIVIDUALLY, PLAINTIFFS–APPELLANTS, v. M. COHEN, M.D., KHALID SAVAGED, M.D., CINDY GALEOTA, C.N.M., JULIO CABAN, M.D., BAOHUONG TRAN, M.D., AND NEWARK BETH ISRAEL MEDICAL CENTER, DEFENDANTS– RESPONDENTS.

A–12 September Term 2016

077821

Argued September 25, 2017—Decided December 14, 2017

338

Alan W. Roth argued the cause for appellants (Bendit Weinstock, attorneys; Alan W. Roth and Nikhil S. Agharkar, on the briefs).

Lauren M. Strollo argued the cause for respondents (Vasios, Kelly & Strollo, attorneys; Lauren M. Strollo, of counsel and on the briefs, and Douglas M. Singleterry, on the briefs).

Thomas M. Comer argued the cause for amicus curiae New Jersey Association for Justice (Lomurro, Munson, Comer, Brown & Schottland, attorneys; Thomas M. Comer and Abbott S. Brown, of counsel and on the brief, and Christina Vassiliou Harvey, on the brief).

Eric S. Poe argued the cause for amicus curiae New Jersey Physicians United Reciprocal Exchange (Eric S. Poe, of counsel and on the brief, and Abbey True Harris, on the brief).

JUSTICE LaVECCHIA delivered the opinion of the Court.

T.T., individually and on behalf of her three-year-old daughter, A.T., filed this medical malpractice action seeking damages from a hospital and several medical professionals for injuries caused during the child's birth.[1] The trial court granted summary judgment to defendants and dismissed the action with prejudice because plaintiff failed to serve a timely affidavit of merit. The Appellate Division affirmed, rejecting plaintiff's argument that the circumstances should have supported entry of a dismissal without prejudice under Rule 4:37–1(b). A.T. ex rel. T.T. v. Cohen, 445 N.J. Super. 300, 303, 137 A.3d 1218 (App. Div. 2016).

One panel member dissented, maintaining that a dismissal based on a failure to comply with the affidavit of merit require-

---

[1] The Court adopts the terminology used in the published Appellate Division opinion and refers to T.T. and A.T. collectively as "plaintiff," notwithstanding their individual claims.

ment should not invariably be with prejudice when appropriate circumstances are present. Id. at 310, 137 A.3d 1218 (Fisher, P.J.A.D., dissenting). The dissent found appropriate circumstances present in respect of the tort claims involving this minor child.

We now reverse the grant of summary judgment to defendants and remand the matter for further proceedings. A combination of circumstances, not the least of which was the failure to schedule a pretrial conference to address the affidavit of merit requirement as our case law directed, warrants allowing the untimely affidavit to be filed. The equities militate in favor of permitting a facially meritorious action to proceed here, particularly because any prejudice to defendants may be addressed through costs imposed by the trial court.

We decline to approve recourse to a voluntary dismissal without prejudice under Rule 4:37-1(b) as an appropriate avenue for addressing failures to comply with the affidavit of merit requirement, including when a minor is involved. Rather, we will require modification of the Judiciary's electronic filing and notification case management system to ensure that, going forward, necessary and expected conferences are scheduled to enhance parties' compliance with requirements under the Affidavit of Merit Statute (AMS or the statute), N.J.S.A. 2A:53A–26 to –29, in furtherance of the statutory policy goals.

I.

As alleged in the complaint, T.T. gave birth to A.T. at Newark Beth Israel Hospital (the Hospital) on May 19, 2011. At the Hospital, T.T. and A.T. were under the care of Morris Cohen, M.D., Khalid Savaged, M.D., Cindy Galeota, C.N.M., Julio Caban, M.D., and Bauhuong Tran, M.D. (collectively, with the Hospital, defendants). As a result of defendants' care, A.T. suffered a birth injury known as Erb's Palsy, also described as a right brachial plexus injury. In her amended complaint filed on September 25, 2013, plaintiff alleges that defendants' treatment of T.T. and A.T. fell below the accepted standard of care and caused A.T.'s injury

and birth defects. Plaintiff further alleges that defendants' negligence caused T.T. the loss of A.T.'s society, companionship, and support.

Defendants [2] filed an answer on December 5, 2013, denying the allegations set forth in the amended complaint and demanding, among other things, that plaintiff produce an affidavit of merit (AOM) pursuant to the AMS.[3] Under the statute, plaintiff had sixty days from that date—or 120 with leave of the court—to file an AOM with respect to each defendant.

By February 3, 2014, sixty days had elapsed since defendants filed their answer, and plaintiff had not served defendants with an AOM. In the interim, plaintiff never sought leave of the trial court to extend the AOM deadline. At no time prior to the sixty-day mark or at any time thereafter did any court personnel attempt to convene a Ferreira [4] conference, and at no time was one requested or waived by counsel. This Court's direction that such a conference be conducted unless waived by the parties, see Paragon Contractors, Inc. v. Peachtree Condo. Ass'n, 202 N.J. 415, 424, 997 A.2d 982 (2010), appears to have been overlooked. By April 4, 2014, 120 days had elapsed since defendants filed their answer, and plaintiff still had not supplied defendants with an AOM.

Three days later, on April 7, 2014, defendants filed a motion for summary judgment. In support, defendants relied on plaintiff's failure to produce an AOM within the statutorily mandated time frame and claimed entitlement to dismissal with prejudice. Plaintiff opposed defendants' motion. In opposition papers filed on May

---

[2] Dr. Savaged was not included in the answer filed, and the record does not disclose any other pleading on his behalf.

[3] A filing complication with the answer was corrected by submission of confirmation that plaintiff had consented to additional time for the filing of defendants' answer.

[4] Ferreira v. Rancocas Orthopedic Assocs., 178 N.J. 144, 154–55, 836 A.2d 779 (2003) (directing that accelerated case management conference be held in malpractice actions to address discovery issues, including AOM requirements).

30, 2014, plaintiff claimed that the need to obtain medical records, which she did not receive in full until May 5, 2014 according to attached emails, impeded her ability to secure a timely AOM. With those papers, plaintiff submitted an AOM dated May 22, 2014.

A hearing was held on defendants' motion on June 20, 2014. Prior to argument on the underlying motion, plaintiff's then-current counsel made an oral application for a voluntary dismissal without prejudice pursuant to Rule 4:37–1(b). Counsel revealed, for the first time, that plaintiff's failure to timely submit an AOM was due to counsel's own oversight, which stemmed from plaintiff's stipulation granting defendants extra time to file an answer. After a colloquy between counsel and the court, the court carried defendants' summary judgment motion in order to permit the engagement of a co-counsel, who was present but not yet retained and who was experienced in handling medical malpractice matters involving New Jersey's AMS requirements. Thereafter, present counsel, Alan Roth, Esq., entered an appearance for plaintiff and filed a written motion for voluntary dismissal without prejudice.

On July 25, 2014, the court heard argument on both plaintiff's motion for dismissal without prejudice to permit the matter to be refiled with an AOM and defendants' motion for summary judgment based on plaintiff's failure to submit a timely AOM. With regard to the former, plaintiff argued that the failure to hold a Ferreira conference and the former attorney's oversight were extraordinary circumstances that would justify the court's use of its discretion to grant a voluntary dismissal without prejudice. Plaintiff also advanced a constitutional argument, contending that the AMS constitutes a violation of the principle of separation of powers. In response, defendants noted that if the court were to permit voluntary dismissal without prejudice, the court would be enabling a circumvention of the AMS, which requires the court to dismiss with prejudice when a plaintiff has failed to timely submit an AOM.

The court declined to rule on the constitutionality issue and denied plaintiff's motion for a voluntary dismissal. The court

granted defendants' motion for summary judgment and dismissed the action with prejudice.

In explaining its finding that no extraordinary circumstances excused the noncompliance in this matter, the court interpreted Paragon to foreclose the possibility that failure to conduct a Ferreira conference ever would amount to an extraordinary circumstance unless the circumstances of the case demonstrated some substantial attempt at compliance with the AMS. Moreover, the court reasoned that neither an attorney's admitted confusion about the time requirements of the AMS nor the minor status of plaintiff A.T. gave rise to an extraordinary circumstance. Determining that there was no attempt to comply substantially with the AMS, the court rejected the request for a dismissal without prejudice:

> The plaintiff seeks a dismissal without prejudice, on terms that if [the case] gets re-filed then the [AOM] would be with it. That's basically . . . engaging in a fiction to make it look like I'd be doing something that was allowed, that really wasn't allowed, which would be extending the time beyond the 120 days. And no matter how you dressed it up and no matter how many orders I put around it, that is essentially what I would be doing. . . . And so the [c]ourt believes that to grant the plaintiff's motion of a dismissal without prejudice, would essentially be to engage in a fictional practice aimed at making it look like the [c]ourt was complying with the legislative directive, when in fact it was not.

Plaintiff filed a motion for reconsideration, reiterating that a dismissal without prejudice was appropriate given A.T.'s minor status and suggesting that the court set conditions for re-filing in order to mitigate potential prejudice to defendants. The court rejected those arguments and again declined to reach plaintiff's argument that the AMS is unconstitutional, noting the argument was not properly before the court.

Plaintiff appealed, arguing that (1) the trial court erred in dismissing the case with prejudice; and (2) the AMS is unconstitutional. Plaintiff asserted that the trial court should have granted a dismissal without prejudice under Rule 4:37–1(b) because there were many years remaining on the statute of limitations for the minor's claim and there had been no prejudice to defendants because they had expended no resources on discovery.

A majority of the Appellate Division panel concluded that "permitting a voluntary dismissal in these circumstances would render the AOM statute meaningless in the case of a minor plaintiff." A.T., 445 N.J. Super. at 308, 137 A.3d 1218. Seeing no substantial compliance or extraordinary circumstances, the Appellate Division rejected the assertion that attorney oversight was sufficient reason to grant a voluntary dismissal under the circumstances. Id. at 306–07, 137 A.3d 1218. Moreover, the majority found it significant that the Legislature opted not to carve out an explicit exception for minors in the AOM time frames. Id. at 309, 137 A.3d 1218. Accordingly, the Appellate Division majority declined to accept the proposition that A.T.'s minor status warranted protection from the AMS beyond the protections afforded by the tolling of the statute of limitations. Ibid. The panel affirmed the order granting summary judgment to defendants and dismissing the matter with prejudice. Ibid.[5]

Judge Fisher dissented. The dissent took issue with the majority's reliance on an earlier decision of the Appellate Division that had addressed a failure to comply with the AMS in a similar factual setting. Id. at 311, 137 A.3d 1218 (Fisher, P.J.A.D., dissenting) (citing Kubiak v. Robert Wood Johnson Univ. Hosp., 332 N.J. Super. 230, 238, 753 A.2d 166 (App. Div. 2000) (holding that failure to comply with AMS must result in dismissal with prejudice, even where plaintiff is a minor)). The dissent viewed Kubiak's holding as inconsistent with the protective care courts of this state have traditionally accorded the tort claims of minors. Id. at 310, 137 A.3d 1218. The dissent disputed Kubiak's premise that "[a] dismissal for failure to comply with the [AMS] is not any different than a dismissal after plenary or summary adjudication" because the purpose of the AMS is to require plaintiffs merely to make a facial showing of a meritorious claim and not to demonstrate any likelihood of success on the merits. Id. at 311, 137 A.3d 1218 (first

---

[5] The panel declined to address plaintiff's argument concerning the constitutionality of the AMS because it was not properly raised before the trial court. Id. at 305, 137 A.3d 1218.

alteration in original) (quoting Kubiak, 332 N.J. Super. at 238, 753 A.2d 166).

Moreover, the dissent asserted that a finding of exceptional circumstances would have been appropriate here, notwithstanding plaintiff's failure to advance that claim, and that such a finding in this case would not be disproportionate to other cases in which courts have found extraordinary circumstances. Id. at 313, 137 A.3d 1218. The dissent compared the minor's attorney's "fumbling of the [AOM] requirement" here to the attorney's failure in Paragon, and argued that it should have been within the trial court's discretion to either find extraordinary circumstances on the facts of this case or to have granted a dismissal without prejudice, particularly because defendants have suffered little by way of prejudice. Id. at 313–14, 137 A.3d 1218. Thus, the dissent would have reversed the judgment of the trial court in order to "foster[ ] disposition of cases on their merits rather than on procedural missteps." Id. at 314, 137 A.3d 1218. In sum, the dissent would have ordered entry of a dismissal without prejudice in light of A.T.'s minor status, her attorney's mishandling of the AOM, and the relatively little prejudice defendants have suffered, and would have allowed the trial court the ability to impose conditions on the re-filing of plaintiff's claims.

This matter is now before us on an appeal as of right from the dissent. R. 2:2–1(a)(2). In this appeal, the parties repeat arguments they advanced below. We also granted amicus curiae status to the New Jersey Association for Justice and the New Jersey Physicians United Reciprocal Exchange.

## II.

The AMS requires a plaintiff to serve an affidavit of merit within sixty days of the filing of defendant's answer; an additional sixty days may be granted by a court upon good cause found. N.J.S.A. 2A:53A–27. The affidavit was identified early on by this Court as a required "threshold showing" that a malpractice claim is not frivolous. In re Petition of Hall, 147 N.J. 379, 391, 688 A.2d

81 (1997). We have recognized the Legislature's intent that the statute facilitate the weeding-out of frivolous lawsuits. Galik v. Clara Maass Med. Ctr., 167 N.J. 341, 350, 771 A.2d 1141 (2001); accord Alan J. Cornblatt, P.A. v. Barow, 153 N.J. 218, 242, 708 A.2d 401 (1998).

■ The failure to provide the affidavit or its legal equivalent is "deemed a failure to state a cause of action," N.J.S.A. 2A:53A–29, and, not long after the AMS was enacted, this Court construed the statute to require dismissal with prejudice for noncompliance, Cornblatt, 153 N.J. at 247, 708 A.2d 401. However, we have recognized equitable exceptions to "temper the draconian results of an inflexible application of the statute," Ferreira, 178 N.J. at 151, 836 A.2d 779 (acknowledging applicability of doctrine of substantial compliance and extraordinary circumstances), and we have created mechanisms to draw attention to and facilitate satisfaction of this statutory obligation and its goals, id. at 154–55, 836 A.2d 779 (establishing discovery-stage case management conference to encourage and facilitate compliance with AMS requirements, to avoid dismissal of meritorious claims due to inadvertence, and to promote AMS's goal of weeding out insubstantial claims).

The Ferreira conference was designed to be the Judiciary's key tool to promote satisfaction of the AMS's salutary policy goals. We mandated the conference and imposed requirements on both courts and defendants to discover and address issues as to the sufficiency of a plaintiff's AOM. Id. at 155, 836 A.2d 779. In the companion case to Ferreira, we stressed that the Ferreira conference is required and reiterated that defendants must raise any objections to an AOM that has been served:

> Our decision in Ferreira requires that an accelerated case management conference be held within ninety days of the service of an answer in all malpractice actions. That conference will allow the courts to head off potential discovery problems before they become the stuff of motions. At the case management conference, the defendant will be obliged to bring to the plaintiff's attention any deficiency in an affidavit of merit already served in order to give the plaintiff the opportunity to cure the defect within the 120–day period. In the event that the affidavit has not been served, the court will remind the parties of their respective obligations. We

trust that early court intervention will make the circumstances of this case unlikely to recur.

[Knorr v. Smeal, 178 N.J. 169, 182, 836 A.2d 794 (2003) (emphases added).]

See also Saunders ex rel. Saunders v. Capital Health Sys. at Mercer, 398 N.J. Super. 500, 510, 942 A.2d 142 (App. Div. 2008) ("Contrary to defendants' contention and the motion judge's decision, Ferreira mandates a case management conference within ninety days of the filing of an answer in a professional malpractice case.").

All that said, in 2010, we wrestled with the fact that mandatory Ferreira conferences were not being routinely conducted as expected, which was thwarting the salutary purpose of the conference requirement. We had sought in Ferreira "[to] ensure that discovery related issues, such as compliance with the [AMS], do not become sideshows to the primary purpose of the civil justice system—to shepherd legitimate claims expeditiously to trial." Paragon, 202 N.J. at 423, 997 A.2d 982 (quoting Ferreira, 178 N.J. at 154, 836 A.2d 779). The conference was designed to serve as reminder of the obligation and to facilitate early identification of "any deficiency in [an] affidavit" already served by a plaintiff. Id. at 423–24, 997 A.2d 982 (quoting Ferreira, 178 N.J. at 155, 836 A.2d 779). In Paragon, we confronted competing decisions in the Appellate Division and trial courts over whether the failure to conduct a Ferreira conference worked a tolling or abeyance of the time period for assessing the timeliness of a late AOM.

Ferreira and Knorr indicated that the conferences were mandatory, but we clarified in Paragon that, "[a]lthough Ferreira conferences should be held as a matter of course, they may be omitted [upon submission of a proposed consent order indicating that] 'the Affidavit of Merit has been provided by plaintiff and all defendants have waived any objections to its adequacy.'" Id. at 424, 997 A.2d 982 (emphasis added) (quoting Waiver of Affidavit of Merit Conference, 176 N.J.L.J. 1006 (2004)). Explaining that it is not "a tolling device," we acknowledged that the conference "was never intended, nor could it have been, as an overlay on the statute that would effectively extend the legislatively prescribed filing period."

Id. at 419, 997 A.2d 982. Although extraordinary circumstances were found to exist in Paragon due to confusion about the tolling role of the Ferreira conference, id. at 425, 997 A.2d 982, we offered counsel for the future. Our decision added that, "going forward, reliance on the scheduling of a Ferreira conference to avoid the strictures of the Affidavit of Merit statute is entirely unwarranted and will not serve to toll the statutory time frames." Id. at 426, 997 A.2d 982.

## III.

### A.

■ No Ferreira conference was conducted in this matter, and, when defendants filed a motion for summary judgment at the conclusion of the 120-day period, plaintiff included an AOM with her response to the motion. Nevertheless, the trial court felt constrained to dismiss with prejudice.

That result worked a double frustration. The Judiciary's key tool to promote satisfaction of the AMS's salutary policy goals was not employed. And the pruning of plaintiff's claim was not the pruning that the AMS is intended to achieve. The statute's intended objective—to curtail insubstantial claims through the claimant's inability to present a supportive affidavit early on, before significant litigation time and expense are incurred—was not advanced.

Although the failure to conduct a Ferreira conference alone may not demonstrate extraordinary circumstances, a confluence of factors persuades us to recognize this case as sufficiently extraordinary to allow the untimely affidavit to be accepted and to require that the matter proceed on its merits.

Our warning in Paragon that the failure to conduct a Ferreira conference would not routinely toll the time for submission of an AOM was not meant to foreclose the finding of extraordinary circumstances when a combination of events occurred. Here, just such circumstances occurred, as noted in the dissent's distillation of what took place in the early stages of this proceeding.

An inexperienced practitioner became confused by timelines and was "not as assiduous as he could or should have been" in securing an AOM on a minor's tort claim, filed well before any statute of limitations period was close to expiring. Paragon, 202 N.J. at 425, 997 A.2d 982. While that type of "attorney inadvertence" will not, standing alone, support a finding of extraordinary circumstances, see Palanque v. Lambert–Woolley, 168 N.J. 398, 405, 774 A.2d 501 (2001) (citing Cornblatt, 153 N.J. at 247, 708 A.2d 401), in this case, the Judiciary failed to do what this Court expected, namely to act as a backstop. No Ferreira conference was scheduled, which would have assisted in keeping the parties focused on the timing of the necessary affidavit. Counsel here did secure an affidavit when defendants filed a motion for summary judgment three days after the time frame for submission of the AOM had expired. We presume from plaintiff's swift compliance upon the filing of the motion that we are dealing with a non-frivolous matter, not the type of case that the AMS intended to weed out.

Yet, the harsh consequence of dismissal with prejudice was meted out in this matter despite the fact that there is no prejudice to defendants that the equitable powers of our courts cannot address. Defendants are aware of the claim, so allowing it to proceed should not impair their ability to mount a substantive defense to the merits of this claim. Permitting the claim to go forward now, as opposed to proceeding by way of a voluntary dismissal without prejudice, eliminates the problem of the future prospect of an action being filed again, at some indefinite point, before the child's age of maturity plus the expiration of the statute of limitation period. Amicus New Jersey Physicians United Reciprocal Exchange raised a concern about the prospect of a minor's claim, dismissed without prejudice, being re-raised in the future as posing a problem for medical professionals required to secure malpractice insurance as a condition of licensure. See N.J.S.A. 45:9–19.17 (requiring all physicians who maintain medical practice in New Jersey to obtain medical malpractice liability insurance); N.J.A.C. 13:35–6.18 (providing minimum standards of either medical malpractice liability insurance coverage or letters of credit for

physicians practicing in New Jersey). And again, the trial court has the discretion to require plaintiff to reimburse defendants for the costs incurred in the extra proceedings that took place as a result of the delayed compliance with the AMS, which can mitigate prejudice to defendants.

Although this matter does not fit neatly into the factual scenarios of past extraordinary-circumstances cases, we are persuaded that equitable relief should be afforded to plaintiff. We regard the circumstances of this case as extraordinary, viewed in combination with the Judiciary's failure here. The lack of a scheduled Ferreira conference significantly contributed to an almost perfect storm of injustice. Plaintiff should not be denied the opportunity to have her facially valid claim move forward and be addressed on its merits.

### B.

■ Notwithstanding our determination to reverse the order of dismissal entered by the trial court and affirmed by the Appellate Division, we further determine not to resort to a voluntary dismissal without prejudice under Rule 4:37–1(b) as an appropriate avenue for addressing the circumstances presented.

Except in certain types of actions inapplicable here, a plaintiff may dismiss voluntarily an action without obtaining a court order provided that either the dismissal occurs before the adverse party has filed an answer or a motion for summary judgment, whichever occurs first, or the plaintiff files a stipulation signed by all parties who have appeared in the action. R. 4:37–1(a). Unless otherwise specified, the dismissal is without prejudice in such circumstances. Ibid. Otherwise, "an action shall be dismissed at the plaintiff's instance only by leave of court and upon such terms and conditions as the court deems appropriate." R. 4:37–1(b). Dismissals under subsection (b) are without prejudice unless directed differently by the court. Ibid.

■■■ Generally stated, a dismissal with prejudice is regarded as "on the merits" of the claim, but a dismissal "based on a court's procedural inability to consider a case" is entered without prejudice. Watkins v. Resorts Int'l Hotel & Casino, Inc., 124 N.J. 398, 415–16, 591 A.2d 592 (1991); Tsibikas v. Morrof, 5 N.J. Super. 306, 310, 68 A.2d 889 (App. Div. 1949); cf. R. 4:37–2(d) ("Unless the order of dismissal otherwise specifies, a[n involuntary] dismissal under R. 4:37–2(b) or (c) and any dismissal not specifically provided for by R. 4:37, other than a dismissal for lack of jurisdiction, operates as an adjudication on the merits."). A dismissal specifying that it is "with prejudice constitutes an adjudication on the merits 'as fully and completely as if the order had been entered after trial.' " Velasquez v. Franz, 123 N.J. 498, 507, 589 A.2d 143 (1991) (quoting Gambocz v. Yelencsics, 468 F.2d 837, 840 (3d Cir. 1972)).

Reviewing courts of this state frown on the use of a dismissal without prejudice under Rule 4:37–1(b) as a mechanism for salvaging a case that has run aground on requirements established in statutes or in the Rules of Court. In rejecting use of Rule 4:37–1 in such a situation, the Appellate Division explained the reasons for deterring such interference with the orderly and efficient administration of litigation:

> [When] plaintiff faced defendants' motion for summary judgment, and moved for a voluntary dismissal in response, the discovery end date had passed. At that point, absent court order, plaintiff was prohibited from offering his late expert report in opposition to defendants' motion for summary judgment and from offering expert testimony at the time of trial. Instead of confronting this difficulty directly—by seeking an extension of discovery pursuant to Rule 4:24–1(c)—plaintiff opted for a solution that, when granted, severely prejudiced defendants by guaranteeing the unnecessary duplication of past efforts.
>
>  The permission given to plaintiff to pursue a new, identical complaint without consequence also served to minimalize the central purpose of our court rules: the fair and efficient administration of justice. See Ragusa v. Lau, 119 N.J. 276, 283, 575 A.2d 8 (1990); Handelman v. Handelman, 17 N.J. 1, 10, 109 A.2d 797 (1954). Were we to endorse the order in question, we would legitimize a gaping loophole in the "Best Practices" rule amendments, which were intended to "improve" and not frustrate "efficiency and expedition of the litigation process." Pressler, Current N.J. Court Rules, cmt. on R. 1:1–2 (2006). The process authorized by Rule 4:37–1(b) cannot be the means of avoiding the requirements of Rule 4:24–1(c) or the means for creating a less efficient or an uneven method for adjudicating disputes. Our

modern procedures could not have evolved to the present day only to prove irrelevant and ineffectual when faced with an artifice such as plaintiff created here.

Plaintiff's claim to relief from his "logistics problem" should have been pursued directly, not disingenuously. Instead of resorting to the charade of a voluntary dismissal coupled with the unveiling of a new complaint waiting in the wings, plaintiff should have first been obligated to seek relief from the discovery end date. Because plaintiff opted not to pursue that proper course, we conclude that the trial judge erred in granting a voluntary dismissal without prejudice, which had the undesirable effect of unraveling all that had been accomplished in this litigation.

[Shulas v. Estabrook, 385 N.J. Super. 91, 102–03, 895 A.2d 1234 (App. Div. 2006).]

As Shulas makes evident, dismissal under Rule 4:37–1(b)'s provisions—requiring court order and on terms as appropriate—serves to protect a defendant from being subjected to duplicate costs of litigation if forced to defend another action based on the same set of claims. See also Union Carbide Corp. v. Litton Precision Prods., Inc., 94 N.J. Super. 315, 317, 228 A.2d 99 (Ch. Div. 1967) (recognizing same policy goals). That said, we stress that to the extent that Shulas seemed to suggest the presence of bad faith, that concern is not present here.

Cracking open the use of dismissals of actions without prejudice to allow more time whenever a plaintiff runs aground on the requirements of the AMS would prolong litigation and potentially eviscerate the AMS policy of weeding out, early on, non-meritorious malpractice cases. While the dissent here did not suggest such a broad use and emphasized the extraordinary circumstances present, we decline to send the matter back for entry of a dismissal without prejudice and instead rely on the presence of extraordinary circumstances to reverse the dismissal entered below. We caution courts to adhere to the spare use of dismissals without prejudice as prior case law instructs. See Shulas, 385 N.J. Super. at 102–03, 895 A.2d 1234.

## C.

In conclusion, this Court will take additional administrative steps to promote adherence to the AMS's salutary goal of promptly culling frivolous malpractice claims and to promote the effective use of court and attorney resources so that meritorious cases may

advance efficiently. We designed our Ferreira conference require-ment to promote such purposes. We made the conference manda-tory to underscore its importance. We imposed the burden of complying with the conference requirement on both attorneys and the Judiciary. We created that failsafe mechanism within our system of case management envisioning that the required confer-ence would be held unless it were knowingly waived. But systems can be imperfect, as this case reflects.

The failure of the Judiciary's current mechanisms to ensure the scheduling of the required Ferreira conference will not be permit-ted to work an injustice in this matter. More improvement in our mechanisms is necessary, however.

Going forward, advancements in our automated case manage-ment system will permit electronic notification of (1) the AOM filing obligation and (2) the scheduling of a Ferreira conference. The electronic case management system will be updated to issue notices to counsel and accomplish those tasks. Further details concerning those improvements will be provided through the Administrative Office of the Courts.

With our announcement of those improvements comes a caution-ary note. Counsel are on notice that disregarding the scheduling of the conference, or waiving the conference, will not provide a basis for relief from AMS obligations.

### IV.

The judgment of the Appellate Division is reversed. The matter is remanded to the trial court for further proceedings consistent with this opinion.

CHIEF JUSTICE RABNER and JUSTICES ALBIN, PATTERSON, FERNANDEZ–VINA, SOLOMON, AND TIMPONE join in JUSTICE LaVECCHIA's opinion.