**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2867-23

LYSHRON STATTEN, as
Administrator Ad Prosequendum
of the ESTATE OF KENNETH
L. DANTZLER, deceased,

      Plaintiff-Appellant,

v.

PREFERRED CARE AT
CUMBERLAND NURSING
AND REHABILITATION and
CUMBERLAND OPERATOR,
LLC,

      Defendants-Respondents.

_____

Argued December 5, 2024 – Decided December 26, 2024

Before Judges Natali and Vinci.

On appeal from the Superior Court of New Jersey, Law Division, Cumberland County, Docket No. L-0445-23.

Samuel H. Burkhardt argued the cause for appellant (Craig A. Altman, PC, attorneys; Craig A. Altman, on the briefs).

Walter F. Kawalec, III, argued the cause for respondents (Marshall Dennehey, PC, attorneys; Walter F. Kawalec, III, and Jessica D. Wachstein, on the brief).

PER CURIAM

In this medical malpractice action, plaintiff Lyshron Statten, as administrator ad prosequendum of the estate of her late father, Kenneth L. Dantzler (Dantzler), appeals from a May 10, 2024 order dismissing her complaint with prejudice. Because we see no error in the court's determinations that plaintiff failed to: (1) file an affidavit of merit (AOM) within the 120-day statutory period provided under N.J.S.A. 2A:53A-27; (2) establish grounds for relief under the equitable exceptions of substantial compliance or extraordinary circumstances; and (3) submit a proper statement in lieu of an AOM under N.J.S.A. 2A:53A-28, we affirm.

I.

Dantzler was a long-term resident of defendant Preferred Care at Cumberland Nursing and Rehabilitation (Preferred Care) and passed away on March 3, 2023. On August 8, 2023, plaintiff filed what she now identifies as a medical malpractice complaint against defendants and other fictitious parties related to Dantzler's care at Preferred Care. Specifically, plaintiff alleged "[o]n or about September 15, 2021, . . . [defendants] failed to properly and adequately

2

care for [Dantzler,]" and "[a]s a result of the carelessness and negligence of the defendants, [Dantzler] suffered severe, disabling injuries of a permanent nature including but not limited to onychomycosis, osteomyelitis, chronic ulcers[,] Lisfranc amputation of the right foot[,] dehiscence of the amputation site, and excruciating physical pain . . . ." Dantzler's autopsy report concluded his cause of death to be a result of atherosclerotic and hypertensive cardiovascular disease. The report also found diabetes mellitus and end-stage renal disease contributed to his death.

Plaintiff attached to her complaint a demand that defendants provide answers to Form C and Form C(1) Uniform Interrogatories as well as ten supplemental interrogatories.[1] In addition, plaintiff included a request for production of documents responsive to fifteen requests.

Plaintiff's civil case information statement (CIS) failed to indicate the matter was a professional malpractice action. In fact, when asked if the case involved such claims, plaintiff responded "NO." As a result, on August 9, 2023,

---

[1] We note, in medical malpractice cases, Form C Uniform Interrogatories direct defendants to also provide responses to Form C(3) "Uniform Interrogatories to be Answered by Defendant(s) in all Professional Malpractice Cases Involving Healthcare Providers Only . . . ." See Pressler & Verniero, Current N.J. Court Rules, Appendix II, www.gannlaw.com (2024).

3

the court advised plaintiff's counsel the matter was designated as a Track II case, with the applicable 300 days for discovery.

After default was entered and vacated, defendants filed their answer on November 17, 2023, and included an affirmative defense demanding "[p]ursuant to N.J.S.A. 2A:53A-26, et seq., . . . plaintiff[] . . . produce an [AOM] within the time allotted therein." After 147 days elapsed, and plaintiff had yet to produce an AOM or take any other actions, on April 12, 2024, defendants filed a motion to dismiss plaintiff's complaint with prejudice.

On April 16, 2023, pursuant to N.J.S.A. 2A:53A-28, plaintiff's counsel filed for the first time a sworn statement in lieu of an AOM. Plaintiff's counsel contended plaintiff was "not required to submit an [AOM because] defendants . . . failed to provide requested medical records for [forty-five] days from the date the records were requested." Additionally, plaintiff's counsel submitted an affidavit from an attorney in their law firm who attested that after plaintiff's counsel had provided defendants with their requested discovery, he "had a phone conversation with [d]efendants' [c]ounsel requesting their discovery responses and, specifically, stating that [plaintiff] require[s] [d]efendants' [a]nswers to Form C Interrogatories."

On April 18, 2024, despite plaintiff's counsel filing a statement in lieu of an AOM pursuant to N.J.S.A. 2A:53A-28, he also submitted an untimely AOM authored by Nicole Wall, R.N., B.S.N., W.C.C., a registered nurse and wound care specialist, and a response to defendants' motion to dismiss. In that response, plaintiff's counsel explained his failure to file a timely AOM as follows: "due to [d]efendants' default, [p]laintiff's [c]ounsel mistakenly lost track of the [AOM] requirement's timeline, however, failure to submit an [AOM] was a procedural oversight that should not result in the draconian punishment of dismissal of [p]laintiff's [c]omplaint with prejudice."

In her belated AOM, Nurse Wall concluded "with [a] reasonable degree of medical probability . . . the negligence and/or carelessness of the [d]efendants . . . caused . . . Dantzler to have the initial and ongoing infections resulting in numerous surgeries and amputations." Wall added, "[t]here exists a reasonable probability that the care, skill[,] or knowledge exercised or exhibited by the . . . defendant[s] . . . fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm." Throughout the AOM, however, Wall indicated her conclusions were limited due to defendants' failure to supply copies of Dantzler's medical records from his time at Preferred Care.

5

The court held oral argument on defendants' motion to dismiss on May 10, 2024.[2] At that proceeding, plaintiff's counsel argued the court should deny defendants' motion because: (1) the AOM requirement was excused because defendants had not complied with plaintiff's discovery requests for Dantzler's medical records; (2) plaintiff substantially complied with the AOM statute by submitting Nurse Wall's affidavit and the sworn statement by plaintiff's counsel; and (3) the court did not hold a Ferreira conference,[3] extraordinary circumstances excused plaintiff's failure to submit an AOM within the required timeframe.

After considering the parties' arguments and submissions, the court granted defendants' motion to dismiss with prejudice, issued a conforming order that same day, and explained its reasoning in an oral decision. The court first found a Ferreira conference was not held because "[p]lainitff[] . . . failed to put

[2] Plaintiff also filed a motion to dismiss defendants' answer for failure to provide discovery responses on April 15, 2024. While that motion was scheduled to be addressed at the May 10 hearing, the court ultimately did not reach that issue as it had been rendered moot by its decision to grant defendants' motion to dismiss.

[3] In Ferreira v. Rancocas Orthopedic Associates, 178 N.J. 144, 154-55 (2003), our Supreme Court declared that in medical malpractice cases, the trial court should hold an accelerated case management conference within ninety days of the filing of the answer to "address all discovery issues, including whether an [AOM] has been served on defendant."

6                                                                          A-2867-23

in [her] CIS that this [was] a professional negligence action. . . . So[,] in this case, the fault of not having a [Ferreira] [c]onference falls squarely on the plaintiff for not indicating that [this] was the type of action that [she was] filing."

Second, addressing defendants' failure to comply with plaintiff's discovery requests, the court acknowledged that although some of those requests could arguably include Dantzler's medical records, the discovery demands did not request them. Additionally, the court noted defendants could not release any of Dantzler's medical records because plaintiff's counsel never sent "a HIPAA authorization . . . ."

As to plaintiff's claim she substantially complied with the AOM statute, the court first determined defendants would be prejudiced if it denied their motion because they would have to "defend and possibly have a judgment against them in a case that needs to be dismissed based upon the case law." The court also rejected plaintiff's argument she took steps to comply with the statute, and explained:

> During the [sixty]-day period there was never a request for another [sixty] days. So really, [plaintiff] had [sixty] days because there was never a motion or a request for an additional [sixty] days. So[,] [plaintiff] really only had until January to file the [AOM], January 16th of this year, because [that was] the [sixty] days.

A-2867-23

Now, if we stretch it and say [plaintiff] could have had 120 days, . . . [that was] . . . March 16th. But during that period of time, [plaintiff was] required to file this statement saying that [she did not] have the medical record[s]. That [was not] done either. So [plaintiff] [did not] request a [Ferreira] [c]onference. [Plaintiff did not] request an additional [sixty] days. [Plaintiff did not] request that the medical records be filed within the time period that [they] were required to do so and the only time [p]laintiff did anything to prosecute this case [was] after this motion was filed.

## II.

Before us, plaintiff reprises the arguments she made before the court. First, in granting defendants' application, plaintiff contends the court incorrectly failed to balance "the prejudice that was suffered by the defendant[s] in comparison to the draconian punishment of the dismissal of plaintiff's complaint." Plaintiff next argues her failure to submit a timely AOM is excused by the doctrine of substantial compliance because: (1) defendants would suffer no prejudice; (2) plaintiff submitted an untimely AOM; (3) dismissal of plaintiff's complaint is contrary to the purpose of the AOM statute to weed out frivolous lawsuits; (4) defendants have long had notice of this claim; (5) plaintiff did not strictly comply with the AOM statute only because her counsel "lost track of the timeline for submitting a timely" AOM due to defendants' default;

8

(6) defendants refused to provide Dantzler's medical records; and (7) the court failed to hold a Ferreira conference.

Next, relying on our Supreme Court's decision in A.T. v. Cohen, 231 N.J. 337 (2017), plaintiff argues the court erred in failing to find extraordinary circumstances. Again citing defendants' purported failure to comply with discovery, plaintiff contends defendants "are attempting to game the [AOM] statute, using it as both a sword and shield to unjustly have [p]laintiffs meritorious claim be dismissed." Finally, plaintiff contends the court failed to apply correctly our decision in Aster ex rel. Garofalo v. Shoreline Behavioral Health, 346 N.J. Super. 536 (App. Div. 2002). Plaintiff argues her counsel "submitted an [a]ffidavit pursuant to N.J.S.A. 2A:53A-28, which excuses the [AOM] requirement because [d]efendant has failed to provide [p]laintiff with any medical records, and any records at all for that matter, for a period much longer than [forty-five] days as prescribed by the [s]tatute." We are unpersuaded by these arguments, except for plaintiff's contention the court erred in concluding defendants suffered prejudice as a result of plaintiff's failure to serve an AOM.

A motion to dismiss for failure to provide an AOM is equivalent to a motion to dismiss for failure to state a claim. See N.J.S.A. 2A:53A-29. We

must "'pass no judgment on the truth of the facts alleged' in the complaint and must 'accept them as fact only for the purpose of reviewing the motion to dismiss.'" Mueller v. Kean Univ., 474 N.J. Super. 272, 283 (App. Div. 2022) (quoting Banco Popular N. Am. v. Gandi, 184 N.J. 161, 166 (2005)). "[W]hether plaintiff satisfied the AOM statute is a matter of statutory interpretation for which our standard of review is de novo." Hoover v. Wetzler, 472 N.J. Super. 230, 235 (App. Div. 2022).

The AOM statute, N.J.S.A. 2A:53A-27, provides:

> In any action for damages for personal injuries, wrongful death or property damage resulting from an alleged act of malpractice or negligence by a licensed person in [their] profession or occupation, the plaintiff shall, within [sixty] days following the date of filing of the answer to the complaint by the defendant, provide each defendant with an affidavit of an appropriate licensed person that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices. The court may grant no more than one additional period, not to exceed [sixty] days, to file the affidavit pursuant to this section, upon a finding of good cause.

"The submission of an appropriate [AOM] is considered an element of the claim." Meehan v. Antonellis, 226 N.J. 216, 228 (2016); see also N.J.S.A. 2A:53A-29. Thus, "where a plaintiff fails to provide an [AOM] within the

10                                                                                      A-2867-23

statutorily mandated timeframe, it shall be deemed a failure to state a cause of action unless the plaintiff satisfies an exception to the [AOM] requirement." Cowley v. Virtua Health Sys., 242 N.J. 1, 23 (2019). Absent an applicable exception, failing to provide an AOM within the statutorily prescribed timeframe "requires dismissal with prejudice for noncompliance." Ibid.

## III.

Because it is undisputed plaintiff did not file a timely AOM, we first address whether the court erred in concluding plaintiff failed to establish the applicability of either equitable exception to the AOM requirement. The sixty-day deadline to file an AOM, extendable by sixty days for good cause to a maximum of 120 days, is subject only "to the long established AOM exceptions for (1) substantial compliance or (2) extraordinary circumstances." Yagnik v. Premium Outlet Partners, LP, 467 N.J. Super. 91, 96 (App. Div. 2021).

As our Supreme Court explained in Palanque v. Lambert-Wooley, 168 N.J. 398, 405 (2001):

> The doctrine of substantial compliance is used by courts to "avoid technical defeats of valid claims," . . . and requires: "(1) the lack of prejudice to the defending party; (2) a series of steps taken to comply with the statute involved; (3) a general compliance with the purpose of the statute; (4) a reasonable notice of petitioner's claim, and (5) a reasonable explanation why there was not a strict compliance with the statute."

11                                                    A-2867-23

[(Internal citations omitted).]

Our Supreme Court has stated "[e]stablishing those elements is a heavy burden." Galik v. Clara Maass Med. Ctr., 167 N.J. 341, 357-58 (2001).

As it relates to the first element, we part company with the court and conclude defendants failed to establish they would be prejudiced by plaintiff's failure to provide a timely AOM. As noted, the court concluded defendants would suffer prejudice if it denied their motion solely because they would have to "defend and possibly have a judgment against them in a case that needs to be dismissed based upon the case law." That determination is contrary to established case law. See, e.g., Mayfield v. Cmty. Med. Assocs., P.A., 335 N.J. Super. 198, 207 (App. Div. 2000) ("[W]e see no prejudice whatever that would result to defendants, other than that they would have to defend against a potentially meritorious claim, which is not legal prejudice.").

With respect to the second element, however, the record establishes plaintiff failed to take any steps necessary to comply with the AOM statute within the 120-day statutory timeframe. For example, plaintiff never: (1) requested a Ferreira conference be held; (2) communicated with defendants or the court that they were having difficulties producing an AOM; (3) requested a sixty-day extension pursuant to N.J.S.A. 2A:53A-27; or (4) produced any

evidence an attempt was made to procure an AOM within the applicable timeframe. Additionally, we are unconvinced plaintiff's untimely AOM satisfies this element as she produced it thirty-three days outside the maximum statutory timeframe.

As to the third element, the Ferreira Court emphasized the AOM statute has a "dual purpose . . . 'to weed out frivolous lawsuits early in the litigation while, at the same time, ensuring that plaintiffs with meritorious claims will have their day in court.'" 178 N.J. at 150 (quoting Hubbard v. Reed, 168 N.J. 387, 395 (2003)). Even if we were to accept plaintiff's argument her AOM satisfies the statute's purpose of "weed[ing] out frivolous lawsuits[,]" an AOM submitted 153 days after defendants filed their answer does not satisfy the "early in the litigation" portion of the statute's goals. Ibid.; see also Est. of Yearby v. Middlesex Cnty., 453 N.J. Super. 388, 403 (App. Div. 2018) (concluding "an AOM served on defendants 107 days after the expiration of the maximum statutory time period does not satisfy the 'early in the litigation' part of the Court's analytical paradigm"); Kritzberg v. Tarsny, 338 N.J. Super. 254, 259 (App. Div. 2001) ("Substantially untimely papers do not promote the 'gatekeeper' function of the statute, i.e., assuring that groundless actions do not linger unduly, . . . and accordingly papers not created nor served within 120 days

cannot be submitted in fulfilment of the statutory requirements.") (internal citation omitted); Davies v. Imbesi, 328 N.J. Super. 372, 379 (App. Div. 2000) (explaining despite plaintiffs' untimely production of an AOM, dismissal of their complaint was not "contrary to the purposes of the statute").

The fourth element "requires plaintiffs to show they gave defendants reasonable notice of the claims against them within the maximum 120-day statutory period." Est. of Yearby, 453 N.J. Super. at 403. This element is not satisfied where the only notice defendants have is a complaint with "generic, non-descriptive allegations . . . ." Id. at 403-04. As in Estate of Yearby, the complaint here does not "identify the standard of care . . . nor describe what actions defendants took or failed to take that deviated from the relevant standard of care." Ibid.

With respect to the fifth and final element, plaintiff has not offered a reasonable explanation why there was not strict compliance with the AOM statute. First, we reject any argument based on the court's failure to conduct a Ferreira conference. As the trial court correctly observed, plaintiff was directly responsible for this omission by inaccurately completing the CIS. See id. at 406 (concluding plaintiff's incorrect designation of their case in their CIS "caused the judiciary's case management system to misdirect the course of the litigation

14

and contributed to the trial court's failure to schedule the required <u>Ferreira</u> conference").

Second, because defendants specifically requested plaintiff provide an AOM in their answer, the fact plaintiff's counsel "lost track of the timeline for submitting a timely" AOM due to defendants' initial default is not a reasonable excuse for strict compliance. Further, we also reject plaintiff's argument under this prong that defendants' failure to produce Dantzler's medical records provides a reasonable explanation for her lack of compliance with the AOM statute, as the proper course would have been to file a compliant statement in lieu of an AOM pursuant to N.J.S.A. 2A:53A-28. In sum, we conclude plaintiff has failed to demonstrate grounds for relief under the equitable doctrine of substantial compliance, as the record reflects plaintiff took no steps to comply with the statute during the applicable timeframe.

As noted, the second equitable exception to the AOM requirement is the doctrine of extraordinary circumstances. <u>See</u> <u>Yagnik</u>, 467 N.J. Super. at 96. "Where extraordinary circumstances are present, a late affidavit will result in dismissal without prejudice." <u>Paragon Contractors, Inc. v. Peachtree Condo. Ass'n</u>, 202 N.J. 415, 422-23 (2010). We recently surveyed the case law in an

15

effort to define the precise scope of this equitable remedy and provided some guidance:

> Extraordinary circumstances do not exist due to: an "undisputed pattern of inattentiveness" and "outright ignorance" by an attorney of requirements under the AOM statute . . . ; the sole fact that the trial court failed to hold a Ferreira conference . . . ; a delay in obtaining the plaintiff's medical records . . . ; an attorney's "[c]arelessness, lack of circumspection, or lack of diligence," . . . ; or "ignorance of the law or failure to seek legal advice . . . ."
>
> Extraordinary circumstances do exist where: the AOM deadline expired before the plaintiff and the defendant finished negotiating a stipulation of dismissal without prejudice, preserving a plaintiff's opportunity to reinstate the claim, and discovery uncovered more about the dismissed defendant's responsibility . . . ; the defendant's answer falsely stated his board certification, the defense failed to correct the misstatement and repeated it in a certification and brief supporting a motion to dismiss, and the court failed to timely conduct a Ferreira conference and dismissed the complaint based on the misrepresentation . . . ; or there is legal confusion over statutory requirements amended by common law . . . .
>
> [Gonzalez v. Ibrahim, 477 N.J. Super. 647, 658 (App. Div. 2024) (alteration in original) (internal citations omitted).]

Based upon the record, we conclude the doctrine of extraordinary circumstances does not apply. First, plaintiff's counsel's admitted failure to diary the applicable statutory timeframes does not constitute extraordinary

16

circumstances. Indeed, it is well-established "'attorney inadvertence' will not, standing alone, support a finding of extraordinary circumstances . . . ." A.T., 231 N.J. at 349 (quoting Palanque, 168 N.J. at 405); see also Paragon, 202 N.J. at 423 (explaining "attorney inadvertence is not" a circumstance entitling plaintiffs to the remedy of extraordinary circumstances).

Second, as noted, the failure to hold a Ferreira conference was due to plaintiff's failure to identify the case as a malpractice action in her CIS and explicitly noting she was not making such a claim. Additionally, despite plaintiff's contention defendants never demanded an AOM, the record establishes defendants' answer included a demand for an AOM. Finally, as we held in Davies, a plaintiff's failure to obtain medical records, standing alone, does not constitute extraordinary circumstances. See 328 N.J. Super. at 378 (explaining a plaintiff's failure to timely obtain medical records does not constitute exceptional circumstances because doing so "would entirely vitiate the significance of N.J.S.A. 2A:53A-28[,] which sets forth the avenue of relief available to a plaintiff who encounters a delay in obtaining copies of records").

Additionally, we find plaintiff's reliance on A.T. unconvincing. In that case, our Supreme Court concluded "[a]lthough the failure to conduct a Ferreira conference alone may not demonstrate extraordinary circumstances,

a confluence of factors persuade[d] [the Court] to recognize this case as sufficiently extraordinary." A.T., 231 N.J. at 348. Specifically, the Court found it significant that the minor plaintiff's counsel was an "inexperienced practitioner [who] became confused by timelines[,]" and "[n]o Ferreira conference was scheduled . . . ." Id. at 349.

Here, plaintiff's counsel admitted at the motion hearing "we're not inexperienced . . . ." Further, as noted, the failure to hold a Ferreira conference was due to plaintiff's misidentification of the matter as one not involving professional malpractice. Under similar circumstances, our court found the failure to hold a Ferreira conference did not constitute extraordinary circumstances. See Est. of Yearby, 453 N.J. Super. at 406-07 (explaining the court's failure to hold a Ferreira conference was caused, at least in part, by plaintiff's counsel incorrectly filling out the CIS and "respond[ing] '[n]o' to the question: 'Is this a professional malpractice case?'"). Simply put, it would be unreasonable to require Superior Court Clerks, who process thousands of CISs annually, to comb through each and every pleading to ensure the parties have correctly designated their cases as malpractice actions, when all that is required is for a plaintiff to characterize correctly the type of action they intend to prosecute.

IV.

As we have concluded the court correctly determined both exceptions to the AOM requirement were inapplicable, we turn to plaintiff's final argument: whether under N.J.S.A. 2A:53A-28 she was excused from the AOM requirement because of defendants' failure to provide her with Dantzler's medical records.[4] As noted, plaintiff contends her counsel "submitted an [a]ffidavit pursuant to N.J.S.A. 2A:53A-28, which excuses the [AOM] requirement because [d]efendant has failed to provide [p]laintiff with any medical records, and any records at all for that matter, for a period much longer than [forty-five] days as prescribed by the [s]tatute."

Plaintiff notes on September 26, 2023, she served defendants with "a demand for [a]nswers to [i]nterrogatories and a [r]equest for [d]ocuments, including medical records . . . ." Because the forty-five-day requirement began to run from the time defendants filed their answer, plaintiff argues they had until January 1, 2024, to provide the requested medical records. Therefore, according

---

[4] It is unclear from the record whether defendants ever produced Dantzler's medical records. Although plaintiff's counsel stated at the motion hearing defendants produced those records two days prior, in her merits brief, plaintiff asserts "[t]o date, [d]efendants have failed to respond to any of [p]laintiff's [d]iscovery [r]equests . . . ." For purposes of our opinion, we have assumed defendants did not produce Dantzler's medical records.

19

to plaintiff, because defendants did not comply with plaintiff's request for Dantzler's medical records, the AOM requirement was excused under N.J.S.A. 2A:53A-28. Again, the record does not support plaintiff's argument.

N.J.S.A 2A:53A-28 provides:

> An affidavit shall not be required pursuant to section 2 of this act if the plaintiff provides a sworn statement in lieu of the affidavit setting forth that: the defendant has failed to provide plaintiff with medical records or other records or information having a substantial bearing on preparation of the affidavit; a written request therefor along with, if necessary, a signed authorization by the plaintiff for release of the medical records or other records or information requested, has been made by certified mail or personal service; and at least [forty-five] days have elapsed since the defendant received the request.

"[A] plaintiff is not relieved of the obligation to provide an [AOM] simply because a defendant has failed to respond to a document request within forty-five days . . . ." Scaffidi v. Horvitz, 343 N.J. Super. 552, 558 (App. Div. 2001). Rather,

> N.J.S.A. 2A:53A-28 applies only to "medical records or other records having a substantial bearing on preparation of the affidavit[.]" A plaintiff may request a great variety of documents to assist in the preparation of a case that are not essential for the preparation of an [AOM]. Moreover, it generally would be difficult, if not impossible, for a defendant to distinguish between documents that have "a substantial bearing on preparation of the [AOM]" and documents that may

simply aid the plaintiff in the eventual proof of a case at trial. Therefore, N.J.S.A. 2A:53A-28 must be construed to require a plaintiff to identify with specificity any medical records or other information he believes are needed to prepare an [AOM], in order to trigger the forty-five[-]day period for a response.

[Id. at 558-59 (first alteration in original).]

When a defendant engages in a wholesale refusal to produce the medical records that it concededly possesses, "it should be presumed" that the withheld records have "a substantial bearing on preparation of the affidavit" as required by N.J.S.A. 2A:53A-28. Aster, 346 N.J. Super. at 543 (quoting N.J.S.A. 2A:53A-28). In such a case, the defendant bears the burden to demonstrate the withheld records are not pertinent to an AOM. Id. at 549. Furthermore, according to Aster, the statement in lieu of an AOM shall be deemed to have been filed as of the plaintiff's initial request for the never-furnished documents or information. Id. at 546. Otherwise, it is subject to the same timeframe set forth in N.J.S.A. 2A:53A-27. Id. at 550.

Applying these principles, we are satisfied plaintiff failed to establish she was excused from the AOM requirement under N.J.S.A. 2A:53A-28. Assuming as did the trial court, plaintiff's requests for answers to Form C Uniform Interrogatories, and other general discovery demands, were specific enough to satisfy Scaffidi, as a threshold matter, plaintiff's statement in lieu of an AOM

21

simply does not comply with the statute.[5]  That is, contrary to the express requirements of N.J.S.A. 2A:53A-28, plaintiff's counsel's sworn statement does not expressly state the requested medical records have "a substantial bearing on preparation of the affidavit."  N.J.S.A. 2A:53A-28.

Indeed, plaintiff's sworn statement notably avoids the required phrase:

> [P]er N.J.S.A. 2A:53A-28, [p]laintiff is not required to submit an [AOM] when defendants have failed to provide requested medical records for [forty-five] days from the date the records were requested.  From the date that [d]efendants filed their [a]nswer, November 17, 2023, their timeframe to provide [p]laintiff with the requisite medical records per N.J.S.A. 2A:53A-28 began to run.  Thus, [d]efendants had until January 1, 2024, to provide the requisite medical records and have failed to do so.  As it currently stands, one-hundred-fifty (150) days have elapsed since [p]laintiff requested medical records and [d]efendant has still failed to provide any medical records or answers to interrogatories.  Thus, pursuant to N.J.S.A. 2A:53A-28, the [AOM] requirement is excused.
>
> [(Emphasis omitted).]

However, even if plaintiff had stated the requested medical records had a substantial bearing on preparation of the AOM, such a bald assertion would be

---

[5]  We note, however, at no point in time did plaintiff inform defendants she required Dantzler's medical records in order to prepare an AOM.  Indeed, plaintiff's initial requests do not state the records were needed for this purpose, nor did plaintiff's counsel aver in his affidavit he informed defendants their responses to Form C interrogatories were needed to supply an AOM.

belied by the fact plaintiff obtained an AOM from Nurse Wall without any of

Preferred Care's records.[6] Not only did Nurse Wall provide an AOM, but the

record establishes plaintiff had in her possession at least nine digital folders

containing Dantzler's medical records from his other medical providers.

Further, any claim plaintiff could not provide an AOM due to defendants'

refusal to provide Dantzler's medical records is contradicted by her counsel's

own admission.  Specifically, as noted, in plaintiff's response to defendants'

motion to dismiss, plaintiff's counsel explained the failure to obtain an AOM

was caused not by defendants' refusal to provide medical records, but by the fact

---

[6] While plaintiff argues the AOM provided by Nurse Wall is insufficient as she lacked "the medical records from [d]efendants that would further bolster and support [p]laintiff's meritorious claims for malpractice against [d]efendants[,]" that argument ignores the distinction between an AOM and an expert report for use at trial.  As our Supreme Court has recently noted, an AOM need only specify "'that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices.'"  Moschella v. Hackensack Meridian Jersey Shore Univ. Med. Ctr., 258 N.J. 110, 127 (2024) (quoting Cornblatt, P.A. v. Barow, 153 N.J. 218, 241 (1998)).  While Nurse Wall did repeatedly note she was limited in the information she could provide without medical records from defendants, she was nonetheless able to conclude "[t]here exists a reasonable probability that the care, skill[,] or knowledge exercised or exhibited by the . . . defendant[s] . . . fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm."

"[p]laintiff's counsel mistakenly lost track of the [AOM] requirement's timeline . . . ."

Additionally, we find plaintiff's reliance on Aster unpersuasive as that case is both factually and legally distinguishable. Aster held when a defendant fails to provide any discovery responses, "it should be presumed" that the withheld records have "a substantial bearing on preparation of the" AOM, and, in such a case, the defendant bears the burden to demonstrate the withheld records are not pertinent to an AOM. 346 N.J. Super. at 543, 549. In that case, however, the plaintiff requested medical records from the defendant on three separate occasions, id. at 541, and the court noted plaintiff could not produce an AOM as those records had a "substantial bearing on the preparation of the [AOM] . . . ." Id. at 544.

Here, not only are plaintiff's requests not as explicit and fulsome as the requests in Aster, but more importantly, plaintiff's counsel never stated in the certification the requested medical records had a substantial bearing on the AOM. Additionally, unlike the plaintiff in Aster who accompanied each request for production with the appropriate authorizations, id. at 539, here plaintiff failed to provide those authorizations. See N.J.S.A. 2A:53A-28. Even if the Aster presumption does apply, defendants correctly argue the fact plaintiff

24                                                                                    A-2867-23

provided an AOM without any records from Preferred Care sufficiently rebutted the presumption Dantzler's medical records from Preferred Care had a substantial bearing on preparation of plaintiff's AOM.

Thus, we conclude plaintiff failed to comply with the statement in lieu of an AOM statute by failing to state or demonstrate the requested medical records had a substantial bearing on preparation of the AOM or otherwise establish the records were necessary to prepare Nurse Wall's AOM, which she produced without these purportedly necessary materials.[7]  Like the Davies court, "[w]e can hardly close our eyes . . . to the fact that once the motion to dismiss was filed, plaintiff[] [was] able to produce an [AOM] . . . ."  328 N.J. Super. at 379.

Finally, while our courts "are loath to visit the sins of the lawyer upon the innocent client[,]" SWH Funding Corp. v. Walden Printing Co., 399 N.J. Super 1, 14 (App. Div. 2008), like the circumstances in Estate of Yearby, "[t]he record here shows an undisputed pattern of inattentiveness coupled with outright ignorance of the legal requirements of the [AOM] statute by plaintiff['s] . . . counsel."  453 N.J. Super. at 407.  Therefore, the trial court correctly found to

---

[7]  In light of our decision, we do not address the court's determination that plaintiff's sworn statement in lieu of an AOM was untimely because it was not submitted within the same timeframe as the AOM pursuant to N.J.S.A. 2A:53A-27.

excuse plaintiff from complying with the AOM statute would require it to ignore the record and rewrite that legislation.

To the extent we have not specifically addressed any of plaintiff's arguments it is because we have concluded they are without sufficient merit to warrant discussion in a written opinion. <u>See</u> <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2867-23