**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3063-21
           A-3517-21

MILL ROAD SOLAR
PROJECT LLC, NEW ENERGY
VENTURES, INC., and GHG
TRADING PLATFORMS, INC.,

      Plaintiffs-Appellants/
      Cross-Respondents,

v.

CEP SOLAR, LTD., MILFORD
SOLAR FARM LLC,
FWH ASSOCIATES. PA,
PURE POWER ENGINEERING,
INC.,[1] GARY R. CICERO,
MARK BELLIN, ESQ.,
TOWNSHIP OF HOLLAND, and
HOLLAND TOWNSHIP PLANNING
BOARD,

      Defendants-Respondents,

and

NEW JERSEY RESOURCES
and FIBERVILLE ESTATES, LLC,

---

[1]  Pure Power Engineering, Inc.'s brief was suppressed by court order.

Defendants-Respondents/
Cross-Appellants.

_____

MILL ROAD SOLAR PROJECT, LLC,
and GHG TRADING PLATFORMS, INC.,

     Plaintiffs-Appellants,

v.

FIBERVILLE ESTATES, LLC,

     Defendant-Respondent.

_____

Argued October 22, 2024 – Decided October 27, 2025

Before Judges Gooden Brown and Vanek.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket Nos. L-2029-19 and L-0863-22.

Michael S. Kimm argued the cause for appellants.

John F. Byrnes argued the cause for respondents CEP Solar Ltd., Milford Solar Farm LLC, Gary R. Cicero and Mark Bellin in A-3063-21 (Byrnes, O'Hern & Heugle, LLC, attorneys; Sean F. Byrnes and John F. Byrnes, on the brief).

John P. Di Iorio argued the cause for Fiberville Estates, LLC, respondent/cross-appellant in A-3063-21 and respondent in A-3517-21 (Shapiro, Croland, Reiser, Apfel & Di Iorio, LLP, attorneys; John P. Di Iorio and Alexander G. Benisatto, on the briefs).

Lisa S. Bonsall argued the cause for respondent/cross-appellant New Jersey Resources in A-3063-21 (McCarter & English, LLP, attorneys; Lisa S. Bonsall, of counsel and on the brief; John R. Stoelker, on the brief).

Frederick T. Mahar argued the cause for respondent FWH Associates, PA, in A-3063-21 (Thompson Becker, LLC, attorneys; Frederick T. Mahar, of counsel and on the brief; Jason A. Peterson, on the brief).

John P. Gallina argued the cause for respondent Holland Township and Holland Township Planning Board in A-3063-21.

Fazzio Law Offices, attorneys for respondent Pure Power Engineering, Inc. (John P. Fazzio, of counsel and on the brief; John J. Boulton, on the brief).

The opinion of the court was delivered by

GOODEN BROWN, P.J.A.D.

These back-to-back appeals, which we consolidate for purposes of issuing a single opinion, stem from a dispute over the development of a solar facility. Plaintiffs Mill Road Solar Project LLC (Mill Road) and GHG Trading Platforms, Inc. (GHG) (collectively, plaintiffs) attempted to develop a solar facility on property owned by defendant/cross-appellant Fiberville Estates, LLC (Fiberville) in Holland Township. After the project failed, defendants CEP Solar Ltd. (CEP), Milford Solar Farm LLC (Milford), Gary R. Cicero (Cicero), Mark Bellin, Esq. (Bellin), and GTB Partners, LLC (GTB) (collectively, the

CEP defendants) ultimately developed the solar facility on the Fiberville property and later sold it to defendant/cross-appellant New Jersey Resources (NJR). Defendants FWH Associates, PA (FWH), and Pure Power Engineering, Inc. (Pure Power) provided engineering and site planning services to both plaintiffs and the CEP defendants. Defendant Holland Township's Planning Board reviewed applications to use the property as a solar farm.

In A-3063-21, plaintiffs appeal from the trial court's: (1) grant of summary judgment to the CEP defendants on plaintiffs' claims of breach of contract, fraud, unjust enrichment, and breach of the covenant of good faith and fair dealing; (2) dismissal of plaintiffs' First Amended Complaint (FAC) against Fiberville without prejudice for failure to state a claim, and denial of plaintiff's motion for leave to amend that complaint; (3) dismissal of plaintiffs' claims against FWH and Pure Power for conversion and breach of their professional and ethical duties for failure to obtain an affidavit of merit (AOM); (4) dismissal of plaintiffs' claim against Holland Township for failure to state a claim; and (5) denial of plaintiffs' motion for a default judgment against Holland Township and NJR. In its cross-appeal, Fiberville asserts that the trial court's dismissal of the FAC should have been with prejudice, not without prejudice. NJR also cross-appeals from the trial court's denial of its motion for sanctions against plaintiffs

for filing an allegedly frivolous motion for default judgment after NJR had already been dismissed from the case.

In A-3517-21, plaintiffs appeal from the trial court's dismissal of their subsequently-filed action against Fiberville on the grounds that plaintiffs' claims were barred by the entire controversy doctrine and plaintiffs failed to state a claim on which relief could be granted. In the subsequent action, plaintiffs raised the same claims they sought to include in a proposed second amended complaint.

Based on our review of the voluminous record and the applicable legal principles, we affirm in part, and reverse in part.

I.

We glean these facts from the record. Mill Road is a New Jersey limited liability company owned by GHG, a Nevada corporation. At some point during the litigation, Mill Road was also owned by New Energy Ventures Inc. (NEV), a Delaware corporation. Mill Road was formed in or around 2015 "as a special purpose entity to develop a utility-scale solar energy farm" which was to be located in Holland Township, on property owned by Fiberville on Mill Road (the Property).

5

Fiberville had previously taken steps to develop a solar facility on the Property and, in 2011, it had entered into a Wholesale Market Participation Agreement (WMPA) with PJM Interconnection LLC (PJM), a regional transmission organization that coordinates the movement of wholesale electricity across several states, including New Jersey, and Jersey Central Power & Light Company (JCPL), which allowed it to sell any electricity generated by a solar facility on the Property to the local utility. In August 2011, the WMPA was filed with the Federal Energy Regulatory Commission (FERC) pursuant to FERC's "independent jurisdictional authority over wholesale sales of electric energy and related products in PJM's markets." In June 2012, Fiberville entered into an Interconnection Agreement[2] and a Construction Agreement with JCPL for the construction of a solar facility on the Property.

On April 15, 2015, GHG and Fiberville entered into a "Purchase and Sale Agreement" whereby Fiberville agreed to sell GHG "all of its right, title and interest in and to the WMPA . . . and any and all other assets related to construction and operation of a solar farm" on the Property, in exchange for a purchase price of $600,000 plus up to $200,000 in reimbursement of Fiberville's expenses for the solar project. The agreement had several conditions, including

---

[2] The Interconnection Agreement was not provided in the record.

A-3063-21

the requirement that Fiberville obtain an assignment to GHG of the WMPA and Interconnection Agreement, in a form reasonably acceptable to GHG's counsel, a mutually executed lease agreement for the Property between Fiberville and GHG, and various regulatory approvals by the New Jersey Board of Public Utilities (BPU) and the Department of Environmental Protection (DEP).

On June 18, 2015, the BPU issued a "Clean Energy Order" in response to Fiberville's request that the proposed solar facility on the Property be certified as a brownfield eligible for Solar Energy Renewable Credits (SRECs) pursuant to N.J.S.A. 48:3-87(t). The Order granted conditional certification of the facility provided that, as built, it complied with all DEP requirements and the requirements of the SREC Registration Program (SRP). In August 2015, PJM and JCPL executed agreements consenting to the assignment of the WMPA and the Interconnection and Construction Agreements to Mill Road.

On September 1, 2015, Fiberville and Mill Road entered into a twenty-year lease for the Property. Under the terms of the lease, Mill Road could only use the Property as a solar facility, and would pay annual rent each year in advance commencing on September 1, 2015. The first year's rent was $200,000, which would increase by 1.5% per year over the lease term. Failure to pay the rent when due that continued for ten days after written notice from Fiberville

7

would be considered an "Event of Default" that would permit Fiberville to terminate the lease "and/or pursue all other appropriate remedies available at law or equity."

Section 10.9 of the lease required both parties to "maintain in the strictest confidence" the terms of the lease, including the amounts payable thereunder, and any information regarding Mill Road's operations, or "any other information that is proprietary or that [Mill Road] requests be held confidential." Excluded from the confidentiality requirement was "any such information that is in the public domain by reason of prior publication through no act or omission" of Fiberville or Mill Road. Also, Fiberville was permitted to disclose otherwise confidential information to its "personal advisors, . . . any prospective purchaser of the Property" or as part of a legal proceeding.

On September 28, 2015, GHG entered into a non-disclosure agreement (NDA) with CEP. The NDA acknowledged that the parties "wish[ed] to explore a business relationship concerning an investment in one or more solar renewable energy projects." The parties agreed not to disclose any confidential information provided pursuant to the NDA to any unrelated third party and restricted any party receiving confidential information from using it "for any purpose except to carry out discussions considering, and the furthering of, any business

8

relationship between the [p]arties." The term of the NDA was "during services performed and one year from the date of the last services performed."

On January 15, 2016, Mill Road filed an application for a variance and preliminary and final site plan approval with Holland Township's Planning Board, seeking to use the Property as a solar farm. On February 5, 2016, Mill Road was advised by the Planning Board's consultants that its application was incomplete and would be denied. Princeton Engineering (Princeton), Mill Road's engineering firm, had created the initial site plan for Mill Road. Dissatisfied with the work performed by Princeton, Mill Road terminated its contract, and, on February 25, 2017, retained Pure Power to provide engineering services for the solar project. Pure Power's services included "re-creating the site plan in it[s] entirety making necessary modifications to both the solar layout and sheet indexes as well as addressing Holland Township's review letters." In March 2017, Pure Power entered into an agreement with FWH to perform engineering services for Mill Road's solar project. Mill Road provided the site plans and other work product it had obtained from Princeton Engineering to Pure Power and FWH.

Under the terms of the written agreement between Mill Road and Pure Power, all documents, plans, computer files and other instruments prepared by

Pure Power "are and shall remain the property of Pure Power" which granted "to the Client and only the Client a non-exclusive, non-assignable and non-transferable license to reproduce, distribute and display" the documents to the extent necessary to complete the project. However, Pure Power retained "all common law, statutory and other reserved rights" to the documents it prepared, including the copyright thereto. Further, under the terms of the agreement between Pure Power and FWH, "the drawings, specifications and other documents furnished by FWH . . . shall not become the property of the owner" but "shall remain the property of" FWH.

Pure Power and FWH prepared revised site plans, which were submitted to the Planning Board for approval at its May 8, 2017 meeting. The Planning Board ultimately approved the variance and the site plans at its June 12, 2017 meeting, subject to various conditions including securing building permits, satisfying applicable ordinances and regulations, and commencing construction within six months.

During this same time period, plaintiffs were engaged in discussions with CEP about selling the solar rights to the project. As certified by Alex Lemus, president of GHG, CEP had approached Mill Road in April 2017 and "expressed an interest in buying the Project Assets prior to construction." According to

10

Lemus, the CEP defendants requested "access to all the information relating to the Project, including the Lease," and plaintiffs agreed to disclose such information "subject to" the NDA signed in 2015. As a result, plaintiffs provided the CEP defendants with "proprietary financial models" as well as "contracts, authorizations, applications, permits and approvals" and a copy of the lease for the Property.

Lemus certified that "[d]iscussions between the parties continued until at least July 25, 2017." Accordingly, Lemus averred that, by its terms, the NDA "terminated, at the earliest on July 25, 2018, one year after the last communication between" plaintiffs and the CEP defendants. In contrast, Cicero testified during his deposition that the NDA had expired "in December of 2015." According to Cicero, before Fiberville leased the Property to plaintiffs, he had already discussed with Fiberville in 2015 the prospect of entering into a lease agreement for the Property. Cicero stated that he later became aware that plaintiffs were having financial difficulties when Pure Power filed an action against plaintiffs for failing to pay Pure Power's bills for engineering services. Pure Power had filed a lien against the Property for the unpaid bills. On August 25, 2017, Bellin, as counsel for CEP, sent an email to Stanley Sackowitz, Senior Vice President of Real Estate for Fiberville, stating that Cicero "would like me

11

to send you a detailed lease for your consideration, assuming that your current tenant does not continue the existing lease."

Plaintiffs did not pay the $206,045 annual rent for the Property that was due on September 1, 2017. According to plaintiffs, this failure was due to "an internal shareholder dispute within the company . . . concerning the company's directions and business strategy." Sackowitz testified at his deposition that Lemus told him in September 2017 that "he didn't have the money" to pay the rent. On September 5, 2017, Fiberville wrote to Mill Road providing notice of default due to its failure to pay the rent and stating that, if payment was not received within ten days, it would have the right to terminate the lease. Lemus certified that in late September 2017, plaintiffs disclosed to the CEP defendants pursuant to the NDA "the fact that the $200,000 annual rent payment which became due for September 1, 2017, was in arrearage."

On October 9, 2017, the Planning Board granted Mill Road a six-month extension of the December 12, 2017 deadline to begin construction, which had been a condition of the variance granted on June 12, 2017. On October 17, 2017, having not received the rent payment, Fiberville wrote to Mill Road terminating the lease, effective immediately. Sackowitz testified that the termination was not induced by the CEP defendants. That same day, October 17, 2017, Fiberville

12

entered into a new lease for the Property with Milford, a New Jersey limited liability company owned by Cicero (the Milford Lease). The Milford Lease was for a term of twenty years, extendable for an additional ten years, and required the payment of $250,000 per year in rent, which would increase by 1.5% after the second year. Under the Milford Lease, Milford was limited to using the Property "solely to install and operate a Photovoltaic Solar Energy Facility."

On November 14, 2017, plaintiffs terminated their contract with Pure Power. In the termination email, Lemus instructed Pure Power "not to speak anybody [sic] or share our work product from the Mill Road project or any other projects." On November 27, 2017, Bellin emailed Sackowitz to memorialize a conversation in which Sackowitz agreed to send a letter to Pure Power stating that "the original lease was terminated, the original tenant no longer has the right to pursue approvals on the site, that the approvals belong to [Fiberville] as a matter of law and that Pure Power is free to work with the new tenant" as far as Fiberville is concerned. On November 28, 2017, Sackowitz sent an email reiterating these terms to Pure Power and confirming that under the Milford Lease, Cicero and Bellin were now in control of the Property and would "be solely and financially responsible for any work authorized by them" that Pure Power undertakes. The same day, Pure Power forwarded the email to FWH.

13

On December 1, 2017, Bellin emailed the Planning Board stating that he represented Milford, "a wholly owned subsidary of" CEP.  Bellin stated that "Milford acquired the rights to the Mill Road Solar Farm recently" and requested a six-month extension of the June 12, 2017 Planning Board approvals of the variance and site plans.

On January 31, 2018, PJM notified FERC of the cancellation of the WMPA that had been assigned to Mill Road.  According to PJM, the WMPA was cancelled because its "material terms and conditions . . . , including the loss of site control, were breached and were not cured, resulting in the default of the" WMPA.

On February 2, 2018, Cicero and Milford entered into a contract for "permitting and resolution compliance" services with respect to the Property with FWH.  JCPL notified Mill Road that it was in breach of both the Construction Agreement and the Interconnection Agreement, and thereafter terminated the Interconnection Agreement, effective March 13, 2018.

On May 9, 2018, Bellin again wrote to Holland Township stating that he represented Milford who had "acquired the development rights to the Mill Road Solar Field."  Bellin requested a twelve-month extension of the deadline to begin construction on the solar facility under the variance previously granted to Mill

Road.  Milford ultimately constructed a solar facility on the Property.  After it was completed, Milford sold its rights to the solar facility to NJR.

On March 18, 2019, plaintiffs and co-plaintiff NEV filed a complaint against CEP, Milford, FWH, and Pure Power.  As to CEP and Milford, the complaint alleged breach of contract by breaching the NDA to use "the [c]onfidential [i]nformation to . . . usurp[] the Solar Rights from [p]laintiffs," tortious interference with prospective economic advantage, fraud, conversion, unjust enrichment, and breach of the covenant of good faith and fair dealing.  As to CEP and Milford, the complaint also sought injunctive relief, declaratory relief, and to pierce the corporate veil.  As to FWH and Pure Power, the complaint alleged that they had "breached their professional and ethical duties to [p]laintiffs" and "converted [p]laintiffs' property by selling the [engineering] site plans and drawings to the CEP [d]efendants."

Both FWH and Pure Power moved to dismiss under Rule 4:6-2(e), asserting that plaintiffs failed to provide the required AOM.  On August 30, 2019, the trial judge heard oral argument on the motions and entered orders with an accompanying written opinion granting the motions to dismiss all claims against FWH and Pure Power with prejudice based on plaintiffs' failure to provide an AOM.

A-3063-21

On September 26, 2019, CEP and Milford moved for summary judgment. On November 22, 2019, following oral argument, the judge denied summary judgment as discovery was not yet complete. On March 9, 2020, NEV moved to voluntarily dismiss its claims against all defendants, which was granted on April 24, 2021.

On June 23, 2021, plaintiffs moved for leave to file its FAC. In a supporting certification, plaintiffs' counsel certified the FAC raised "issues that were discovered during discovery" through depositions and "from certain OPRA[3] records obtained from Holland Township after February 2021." On July 9, 2021, the judge granted plaintiffs' motion.

Thereafter, plaintiffs filed the FAC, adding as defendants Cicero, described as the "officer, shareholder, moving force and alter ego" of CEP; Bellin and GTB, Bellin's law firm, as counsel to CEP; NJR; Holland Township and the Holland Township Planning Board (Planning Board) (collectively, Holland Township); and Fiberville. As to the CEP defendants, plaintiffs again asserted breach of contract (count one), tortious interference with prospective economic advantage (count two), fraud (count three), conversion (count four), unjust enrichment (count five), and breach of the covenant of good faith and fair

---

[3] "OPRA" refers to the Open Public Records Act, N.J.S.A. 47:1A-1 to -13.

dealing (count six), and sought to pierce the corporate veil (count seven), injunctive relief (count eight), and declaratory relief (count nine). Plaintiffs added claims against the CEP defendants for alleged violations of the federal Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-1968 (count eleven), violation of the New Jersey Trade Secrets Act, N.J.S.A. 56:15-1 to -9 (count twelve), and conspiracy to commit theft (count fifteen).

Plaintiffs also sought a declaratory judgment that the Planning Board's actions taken in favor of Milford were void (count thirteen), and that NJR's acquisition of the Solar Rights allegedly belonging to plaintiffs was void (count fourteen). Plaintiffs further reiterated their claims of breach of professional and ethical duties and conversion against Pure Power and FWH (count ten), notwithstanding the judge's prior dismissal of those claims.

On July 30, 2021, the CEP defendants moved for summary judgment with respect to counts one through nine of the FAC. On August 5, 2021, the CEP defendants moved for dismissal of the FAC pursuant to Rule 4:6-2(e). Following oral argument, on September 23, 2021, the judge issued an order and accompanying written opinion granting summary judgment to the CEP defendants as to counts one through nine. The same day, the judge entered an

17

order granting the CEP defendants' motion to dismiss "as moot pursuant to the written decision dated [September 23, 2021]." The order specifically provided that counts eleven, twelve, thirteen and fifteen were dismissed with prejudice.

On October 6, 2021, plaintiffs moved for leave to file a second amended complaint (SAC), to add claims against Fiberville for fraud in the inducement (count sixteen), breach of contract and breach of the covenant of good faith and fair dealing (count seventeen), and breach of lease and unlawful self-help (count eighteen). On October 28, 2021, Fiberville opposed the motion and cross-moved to dismiss the FAC. Following oral argument, the judge issued an order and written opinion on December 7, 2021, denying plaintiffs' motion to file a SAC and granting Fiberville's motion to dismiss the FAC without prejudice.

On January 28, 2022, the judge sua sponte ordered plaintiff's complaint against NJR dismissed without prejudice for lack of prosecution and requiring a "formal notice of motion . . . to restore th[e] party to active trial status." The judge had previously entered an order stating the complaint as to NJR would be dismissed for lack of prosecution "pursuant to Rule 1:13-7 or Rule 4:43-2 unless action required under the . . . rules [was] taken."

On February 14, 2022, plaintiffs moved for a default judgment against Holland Township and NJR. Holland Township opposed the motion and cross-

moved to dismiss the complaint for failure to state a claim. NJR opposed the motion and cross-moved for sanctions, asserting that it had never been properly served and had already been dismissed from the case. On April 5, 2022, the judge issued orders and an accompanying written opinion denying plaintiffs' motion for a default judgment, granting Holland Township's motion to dismiss, and denying NJR's motion for sanctions. On May 23, 2022, the judge issued a final judgment terminating the action, as "[a]ll matters against all parties" had "been resolved or otherwise addressed."

Prior to the entry of the May 23, 2022 order terminating the action, on February 14, 2022, plaintiffs had filed a new complaint against Fiberville asserting claims identical to those contained in the SAC. Specifically, the new complaint alleged fraud, breach of contract, breach of the covenant of good faith and fair dealing, and breach of lease and unlawful self-help. On April 29, 2022, Fiberville moved to dismiss the new complaint under Rule 4:6-2(e). Following oral argument, the judge issued an order and written opinion on June 22, 2022, granting Fiberville's motion to dismiss with prejudice. The judge found that plaintiffs' claims were barred by the entire controversy doctrine and failed to state a claim on which relief could be granted. These appeals followed.

A-3063-21

In A-3063-21, plaintiffs appeal from the May 23, 2022 final judgment as well as the August 30, 2019, September 23, 2021, December 7, 2021, and April 5, 2022 orders. NJR cross-appeals from the May 23, 2022 final judgment, and Fiberville cross-appeals from the December 7, 2021 order to the extent it dismissed the FAC "without prejudice" as opposed to "with prejudice." In A-3517-21, plaintiffs appeal from the June 22, 2022 order.[4]

## II.

## CEP Defendants

In A-3063-21, plaintiffs first argue for reinstatement of the CEP defendants, asserting that the judge erred in granting summary judgment because (1) the denial of CEP's first motion for summary judgment should be considered the "law of the case;" and (2) plaintiffs demonstrated material issues of fact precluding summary judgment. Plaintiffs' arguments are limited to counts one (breach of contract); three (fraud); five (unjust enrichment), six (breach of the covenant of good faith and fair dealing), eight (injunctive relief) and nine (declaratory relief).

Our analysis begins with some established principles regarding our standard of review. "[W]e review the trial court's grant of summary judgment

---

[4] We denied plaintiffs' motion to consolidate A-3517-21 with A-3063-21.

de novo under the same standard as the trial court."  Templo Fuente De Vida

Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016).  That

standard is well-settled.

> [I]f the evidence of record—the pleadings, depositions, answers to interrogatories, and affidavits—"together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact," then the trial court must deny the motion.  R. 4:46-2(c); see Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).  On the other hand, when no genuine issue of material fact is at issue and the moving party is entitled to a judgment as a matter of law, summary judgment must be granted.  R. 4:46-2(c); see Brill, 142 N.J. at 540.
>
> [Steinberg v. Sahara Sam's Oasis, LLC, 226 N.J. 344, 366 (2016) (citations reformatted).]

"An issue of material fact is 'genuine only if, considering the burden of

persuasion at trial, the evidence submitted by the parties on the motion, together

with all legitimate inferences therefrom favoring the non-moving party, would

require submission of the issue to the trier of fact.'"  Grande v. Saint Clare's

Health Sys., 230 N.J. 1, 24 (2017) (quoting Bhagat v. Bhagat, 217 N.J. 22, 38

(2014)).  "A party opposing a motion for summary judgment may not rely on

unsupported assertions in their pleadings or in their opposition to defeat the

motion" but must instead "come forward with affirmative proof that 'the facts

are not as the movant alleges.'"  Zelnick v. Morristown-Beard School, 445 N.J.

Super. 250, 260 (App. Div. 2015) (quoting Spiotta v. William H. Wilson, Inc., 72 N.J. Super. 572, 581 (App. Div. 1962)).

Where there is no material fact in dispute, "we must then 'decide whether the trial court correctly interpreted the law.'" DepoLink Ct. Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (quoting Massachi v. AHL Servs., Inc., 396 N.J. Super. 486, 494 (App. Div. 2007), overruled on other grounds by Wilson ex rel. Manzano v. City of Jersey City, 209 N.J. 558 (2012)). "We review issues of law de novo and accord no deference to the trial judge's [legal] conclusions . . . ." MTK Food Servs., Inc. v. Sirius Am. Ins. Co., 455 N.J. Super. 307, 312 (App. Div. 2018).

Stated differently, summary judgment "should be granted, in particular, 'after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Friedman v. Martinez, 242 N.J. 449, 472 (2020) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). As such, we must consider the essential elements of plaintiffs' claims of breach of contract, fraud, unjust enrichment, breach of the covenant of good faith and fair dealing, as well as their request for injunctive and declaratory relief.

22

To demonstrate a breach of contract, plaintiffs must

> prove four elements: first, that "the parties entered into a contract containing certain terms"; second, that "plaintiffs did what the contract required them to do"; third, that "defendants did not do what the contract required them to do," defined as a "breach of the contract"; and fourth, that "defendants' breach, or failure to do what the contract required, caused a loss to the plaintiffs."
>
> [Goldfarb v. Solimine, 245 N.J. 326, 338-39 (2021) (quoting Globe Motor Co., 225 N.J. at 482).]

To demonstrate fraud, plaintiffs must demonstrate:

> (1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereupon by the other person; and (5) resulting damages.
>
> [Gennari v. Weichert Co. Realtors, 148 N.J. 582, 610 (1997)).]

To demonstrate unjust enrichment, "'a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust' and that the plaintiff 'expected remuneration' and the failure to give remuneration unjustly enriched the defendant." EnviroFinance Grp., LLC v. Env't Barrier Co., LLC, 440 N.J. Super. 325, 350 (App. Div. 2015) (quoting VRG Corp. v. GKN Realty Corp., 135 N.J. 539, 554 (1994)).

23

"[I]n New Jersey the covenant of good faith and fair dealing is contained in all contracts and mandates that 'neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'" Seidenberg v. Summit Bank, 348 N.J. Super. 243, 253 (App. Div. 2002) (quoting Sons of Thunder v. Borden, Inc., 148 N.J. 396, 420 (1997)). To succeed on a claim of breach of the covenant of good faith and fair dealing, the plaintiff must not only show that defendant has injured its right to receive the "contractual benefits" but "must also prove the defendant's 'bad motive or intention.'" Iliadis v. Wal-Mart Stores, Inc., 191 N.J. 88, 110 (2007) (quoting Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs., 182 N.J. 210, 225 (2005)).

In granting summary judgment to the CEP defendants on counts one through nine, the judge found it undisputed that plaintiffs defaulted on their lease for the Property by failing to pay the rent due on September 1, 2017, and that Fiberville terminated the lease as a result. The judge further found that the NDA was dated September 28, 2015, but "only provided for a one-year term" and "[t]he exact nature of what, if any, 'confidential' information was shared is at best not clear."

With respect to count one, breach of contract, the judge determined:

Plaintiffs fail[ed] to prove any breach of contract by CEP [d]efendants resulted in the damages [p]laintiffs allege. All damages set forth by [p]laintiff[s] relate directly to their loss of the Solar Project. The facts demonstrate that [p]laintiffs defaulted under their Lease for the subject Property, lost possessory interest in the Property upon which the Solar Project was to be built, and subsequently lost the Solar Rights for which they claim damages. Plaintiffs' assertions fail to connect any facts between CEP [d]efendants and [p]laintiffs' default under the lease. If [p]laintiffs had not defaulted under the Lease, they would have the Solar Rights and Solar Project, and the subject action would be moot.

The judge explained that:

For any solar project in New Jersey that seeks to connect to the existing power grid, the approvals consist of a [WMPA] with PJM, an agreement with the utility power company, such as [JCPL], and registrations with the [BPU]. However, to finalize and rely upon these approvals, the developer must have a recognized possessory interest in the land to be developed, as well as local land use approval. If a developer does not have this land interest, its approvals to connect to the grid are voidable if the PJM, JCPL, or the BPU learn that the entity does not exercise control over that land. Moreover, if a solar developer fails to obtain or lose one of the approvals comprising the bundle (as in this case), it cannot move forward with the solar project.

The judge reasoned that:

[T]he loss of the Property was the direct and proximate result of [p]laintiffs' failure to cure the default under the Lease with Fiberville. Once [p]laintiff[s] lost land control of the Property, PJM

voided the Solar Right for [p]laintiffs. CEP [d]efendants did not void the rights; PJM did so once [p]laintiffs lost land control of the Property where the Solar Project was to be built. Plaintiffs cannot seek damages against a blameless third party simply because CEP [d]efendants signed an NDA. Plaintiffs do not establish the requisite causal link between a breach of the NDA and [p]laintiffs['] default under the Lease and subsequent loss of their Solar Rights.

Similarly, the judge found that plaintiffs could not satisfy the elements for fraud (count three) or breach of implied covenant of good faith and fair dealing (count six) "as each [was] premised on the claim that [p]laintiffs had a continuing right to develop the Solar Project," which did not exist by virtue of their default on the rent payment. As to the unjust enrichment claim (count five), the judge found that "CEP [d]efendants did not receive any benefit from . . . [p]laintiffs for which compensation [was] due" and plaintiffs could not "claim CEP [d]efendants were unjustly enriched when the cause of [p]laintiffs' loss of the Solar Rights was of their own doing." As to the claim for injunctive relief (count eight), the judge explained that "[i]njunctive relief [was] a remedy, not an independent cause of action," and the claim failed because the underlying causes of action failed. The judge also rejected plaintiffs' request in count nine for "a declaration that they [were] the owners of the subject Solar Rights," finding "no factual or legal basis to support [such] a finding."

26

Plaintiffs assert that by using confidential information regarding plaintiffs' lease with Fiberville to negotiate their own lease with Fiberville, the CEP defendants breached the NDA. In support, plaintiffs contend the confidential information disclosed was subject to the NDA that remained in effect throughout 2017, and the breach resulted in the loss of a potential $3 million sale of the "turn-key" rights to the solar facility. Plaintiffs also argue that contrary to the judge's ruling, they need not demonstrate any actual damages to defeat a motion for summary judgment.

The judge mistakenly found that the NDA, which was dated September 28, 2015, "only provided for a one-year term." Instead, the NDA's express terms provided that its "term . . . shall be during services performed and one year from the date of the last services performed." The parties dispute the NDA's termination date. A certification by Lemus filed in opposition to CEP's first motion for summary judgment supports plaintiffs' claim that the NDA remained in effect until July 25, 2018. In contrast, Cicero testified during his deposition that the NDA's term had expired in December 2015.

Although the judge erred in resolving the factual dispute regarding the termination date of the NDA in favor of the CEP defendants, nevertheless, plaintiffs have not demonstrated a dispute of material fact as to whether the CEP

27

defendants breached the NDA by using confidential information obtained from plaintiffs to negotiate CEP's own lease with Fiberville. Plaintiffs' merits brief only refers to the FAC to support its argument that the CEP defendants breached the NDA, which is insufficient to defeat a summary judgment motion. Zelnick, 445 N.J. Super. at 260 ("A party opposing a motion for summary judgment may not rely on unsupported assertions in their pleadings . . . to defeat the motion."). In the FAC, plaintiffs alleged that they disclosed the rent arrearage to the CEP defendants "in late September 2017" and CEP used the information to enter into its own agreement with Fiberville. However, "conclusory and self-serving assertions by one of the parties are insufficient to overcome" a summary judgment motion. Puder v. Buechel, 183 N.J. 428, 440-41 (2005). Because the record fails to demonstrate that the CEP defendants breached the NDA, plaintiff's' breach of contract claim fails.

Even if there was a breach, the record fails to demonstrate that CEP's alleged breach "caused a loss to the plaintiffs." Goldfarb, 245 N.J. at 339 (quoting Globe Motor Co., 225 N.J. at 482). New Jersey courts "abide by the rule of Hadley v. Baxendale, 156 Eng. Rep. 145, 9 Exch. 341, (Eng.1854)" with respect to the damages awarded for a breach of contract claim; that is "the injury suffered must be 'a natural and proximate result of [the] breach which can be

fairly said to have been within the contemplation of the parties at the time the contract was entered.'" Zelnick, 445 N.J. Super. at 260-61 (quoting Coyle v. Englander's, 199 N.J. Super. 212, 223 (App. Div. 1985)). Here, as the judge found, plaintiffs have not demonstrated that any alleged damages they suffered were proximately caused by the asserted breach of the NDA by CEP. Instead, plaintiffs' alleged damages were solely caused by their admitted failure to make the rental payments due under the lease, which resulted in the termination of the lease for the Property. Plaintiffs failed to establish any causal link between an alleged breach of the NDA and their claimed losses. Had plaintiffs made the lease payments, they would have retained control of the Property and the approvals.

Plaintiffs contend that summary judgment was inappropriate because "proof of actual damages is not necessary to survive summary judgment on a breach of contract claim." Plaintiffs assert they could have been entitled to nominal damages if they had demonstrated a breach of the NDA. However, plaintiffs cite no New Jersey case to support their position. Although nominal damages are available to a plaintiff whose proofs at trial satisfy the other elements of his or her breach of contract claim, but do not sufficiently demonstrate actual damages, this does not mean that a breach of contract

29

plaintiff can withstand a summary judgment motion without some prima facie evidence of both causation and damages.

Our Supreme Court has made it clear that one of the elements of a breach of contract claim is that "defendant[s'] breach, or failure to do what the contract required, caused a loss to the plaintiff[s]." Globe Motor Co., 225 N.J. at 482. In reviewing a motion for summary judgement, "neither the motion court nor an appellate court can ignore the elements of the cause of action or the evidential standard governing the cause of action." Id. at 480-81 (quoting Bhagat, 217 N.J. at 38). Thus, in the absence of any evidence demonstrating that plaintiffs suffered some type of damage that was proximately caused by the alleged breach of the NDA by the CEP defendants, we agree with the judge that plaintiffs' breach of contract claim is doomed.

We also agree with the judge's decision granting summary judgment dismissal to the CEP defendants on the fraud count (count three). To establish count three, plaintiffs argue that Bellin made false statements to Holland Township when he informed the Township by letter dated May 9, 2018, that his client, Milford, had "acquired the development rights to the Mill Road Solar Field." According to plaintiffs, Milford had "not acquired anything at all from plaintiffs" but merely "obtained a new lease" from Fiberville. Even accepting

plaintiffs' allegation as true, plaintiffs failed to demonstrate any damages resulting from the statements. Indeed, as the judge found, plaintiffs' fraud claims were "premised on the claim that [p]laintiffs had a continuing right to develop the Solar Project" which did not exist after plaintiffs defaulted on the lease. Critically, Bellin's May 9, 2018 statements to Holland Township came several months after Fiberville had terminated the lease for the Property due to plaintiffs' admitted default and therefore had no relation to plaintiffs' claimed damages.

Likewise, we agree with the judge's decision granting summary judgment dismissal to the CEP defendants on the unjust enrichment count (count five). Although plaintiffs had asserted in their FAC that the CEP defendants received unjust enrichment because they "have taken over the Solar Rights without plaintiff's authorization and without paying proper consideration to plaintiffs," on appeal, plaintiffs argue only that because their breach of contract claim "was valid[,]" their "quasi-contractual" unjust enrichment claim should not be dismissed. On the contrary, plaintiff's breach of contract claim fails and, as the judge noted, the CEP defendants "did not receive any benefit from [p]laintiffs for which compensation [was] due."

31

A-3063-21

On appeal, as with the unjust enrichment count, plaintiffs assert that because their breach of contract claim "was valid[,]" their "quasi-contractual" claim of breach of the covenant of good faith and fair dealing in count six should not be dismissed. For the reasons previously stated, plaintiffs' assertion is baseless.[5] We also agree with the judge that summary judgment dismissal of counts eight and nine was warranted as they sought injunctive and declaratory relief, respectively, on the basis of the other counts.

Equally unavailing is plaintiffs' contention that the denial of the CEP defendants' initial motion for summary judgment should have been considered the "law of the case," mandating denial of their second summary judgment motion. "[A]n order denying summary judgment is not subject to the law of the case doctrine because it decides nothing and merely reserves issues for future disposition." Gonzalez v. Ideal Tile Importing Co., 371 N.J. Super. 349, 356 (App. Div. 2004). That is precisely what occurred here. In denying CEP and Milford's first motion, the judge explained that because discovery was not set to "end until June 24, 2020," a summary judgment motion was not "ripe for . . . consideration." Subsequently, following the completion of discovery, the judge

---

[5] Although the judge mistakenly considered the lease with Fiberville as the underlying contract in evaluating count six, instead of the NDA as specified by plaintiffs in the FAC, our de novo review renders the error harmless.

considered and granted the motion. We are satisfied that denying the first motion because discovery was not yet complete decided nothing but merely reserved the issue for future disposition after the parties had completed the lengthy discovery process.

Fiberville

In A-3063-21, plaintiffs argue the judge erred in dismissing the FAC without prejudice against Fiberville for failure to state a claim and in denying their motion for leave to file the SAC. In A-3517-21, plaintiffs argue the judge erred in dismissing essentially their refiled SAC in a separate action as the statute of limitations had not yet run on their claims and the two actions were not successive and therefore not subject to the entire controversy doctrine (ECD).

In its cross-appeal in A-3063-21, Fiberville argues that dismissal of the FAC was proper, but the court erred in not ordering such dismissal with prejudice. In A-3517-21, Fiberville contends that the ECD barred plaintiffs' attempt to refile the SAC in a subsequent action and, in any event, none of plaintiffs' claims against Fiberville was sustainable as a matter of law.

Rule 4:6-2(e) permits a trial court to dismiss a complaint for "failure to state a claim upon which relief can be granted." In analyzing a motion filed

under the Rule, the trial court "must accept as true the facts alleged in the complaint, and credit all reasonable inferences of fact therefrom, to ascertain whether there is a claim upon which relief can be granted." Malik v. Ruttenberg, 398 N.J. Super. 489, 494 (App. Div. 2008) (citing Donato v. Moldow, 374 N.J. Super. 475, 483 (App. Div. 2005); Seidenberg v. Summit Bank, 348 N.J. Super. 243, 250 (App. Div. 2002)). To that end, the court must "'search[] the complaint in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim, opportunity being given to amend if necessary.'" Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989) (quoting Di Cristofaro v. Laurel Grove Mem'l Park, 43 N.J. Super. 244, 252 (App. Div. 1957)). Still, "the legal requisites for plaintiffs' claim must be apparent from the complaint itself," and "the motion should be granted if even a generous reading of the allegations does not reveal a legal basis for recovery." Edwards v. Prudential Prop. & Cas. Co., 357 N.J. Super. 196, 202 (App. Div. 2003).

"An appellate court reviews de novo the trial court's determination of the motion to dismiss under Rule 4:6-2(e)" and "owes no deference to the trial court's legal conclusions." Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C., 237 N.J. 91, 108 (2019) (citing Stop & Shop Supermarket

Co., LLC v. County of Bergen, 450 N.J. Super. 286, 290 (App. Div. 2017));

Rezem Fam. Assocs., LP v. Borough of Millstone, 423 N.J. Super. 103, 114

(App. Div. 2011). Like the trial court, "our inquiry is limited to examining the

legal sufficiency of the facts alleged on the face of the complaint." Printing

Mart, 116 N.J. at 746. "The examination of a complaint's allegations of fact

required by the aforestated principles should be one that is at once painstaking

and undertaken with a generous and hospitable approach." Ibid.

Under Rule 4:9-1, once a responsive pleading has been served, a

complaint may be amended "only by written consent of the adverse party or by

leave of court which shall be freely given in the interest of justice." The Rule

"'requires that motions for leave to amend be granted liberally' and that 'the

granting of a motion to file an amended complaint always rests in the court's

sound discretion.'" Notte v. Merchants Mut. Ins. Co., 185 N.J. 490, 501 (2006)

(quoting Kernan v. One Washington Park Urban Renewal Assocs., 154 N.J. 437,

456-57 (1998)). We "review a trial court's decision to grant or deny a motion to

amend the complaint for abuse of discretion." Grillo v. State, 469 N.J. Super.

267, 275 (App. Div. 2021) (quoting Port Liberte II Condo. Ass'n, Inc. v. New

Liberty Residential Urb. Renewal Co., 435 N.J. Super. 51, 62 (App. Div. 2014)).

In considering a motion for leave to amend, the trial court's "exercise of discretion requires a two-step process:  whether the non-moving party will be prejudiced, and whether granting the amendment would nonetheless be futile." Notte, 185 N.J. at 501.  In analyzing whether the requested amendment would be futile, the court must determine "whether the amended claim will nonetheless fail and, hence, allowing the amendment would be a useless endeavor."  Ibid. Courts are therefore "free to refuse leave to amend when the newly asserted claim is not sustainable as a matter of law."  Ibid.  In making those determinations, "the factual situation in each case must guide the court's discretion, particularly where the motion is to add new claims or new parties late in the litigation." Bonczek v. Carter Wallace, Inc., 304 N.J. Super. 593, 602 (App. Div. 1997).  As such, "[o]ne of the factual situations to be considered by the trial court is the reason for the late filing."  Verni ex rel. Burstein v. Harry M. Stevens, Inc., 387 N.J. Super. 160, 196 (App. Div. 2006) (citing Bonczek, 304 N.J. Super. at 602).

"[T]he notion of liberality in permitting amendments is not 'intended to afford a refuge to languid and dilatory litigants.'" Young v. Schering Corp., 275 N.J. Super. 221, 231 (App. Div. 1994) (quoting Welsh v. Bd. of Ed. of Tewksbury Twp., 7 N.J. Super. 141, 146 (App. Div. 1950)).  Thus, a trial court's

exercise of discretion to deny leave to amend "'will be sustained where the trial court refuses to permit new claims and new parties to be added late in the litigation and at a point at which the rights of other parties to a modicum of expedition will be prejudicially affected.'" Brown v. Twp. of Old Bridge, 319 N.J. Super. 476, 513 (App. Div. 1999) (quoting Du-Wel Prods., Inc. v. U.S. Fire Ins. Co., 236 N.J. Super. 349, 364 (App. Div. 1989)).

Similarly, a trial court's denial of leave to amend was upheld where prejudice was found to the non-moving party where the plaintiffs "dilatory tactics" in delaying a motion to add claims for "over two years," until the eve of trial, prevented any discovery on the new claims and exposed the non-moving party to greater liability. Mercedes-Benz Credit Corp. v. Lotito, 328 N.J. Super. 491, 511 (App. Div. 2000); see also Building Materials Corp. of Am. v. Allstate Ins. Co., 424 N.J. Super. 448, 485 (App. Div. 2012) (affirming denial of motion to amend complaint to add additional claims one month before trial, when "no reason other than 'inadvertence'" was offered for failure to include claims, and non-moving party "would have been significantly prejudiced if denied the opportunity to conduct discovery").

"The entire controversy doctrine 'seeks to impel litigants to consolidate their claims arising from a single controversy whenever possible.'"

Dimitrakopoulos, 237 N.J. at 98 (quoting Thornton v. Potamkin Chevrolet, 94 N.J. 1, 5 (1983) (internal quotation marks omitted)).

> The "doctrine 'embodies the principle that the adjudication of a legal controversy should occur in one litigation in only one court; accordingly, all parties involved in a litigation should at the very least present in that proceeding all of their claims and defenses that are related to the underlying controversy.'"
>
> [Bank Leumi USA, v. Kloss, 243 N.J. 218, 227 (2020) (quoting Wadeer v. N.J. Mfrs. Ins. Co., 220 N.J. 591, 605 (2015)).]

"If a party fails to assert a claim that the entire controversy doctrine requires to be joined in a given action, a court may bar that claim." Dimitrakopoulos, 237 N.J. at 98 (citing R. 4:30A; R. 4:7-1).

"The doctrine has three fundamental purposes: '(1) the need for complete and final disposition through the avoidance of piecemeal decisions; (2) fairness to parties to the action and those with a material interest in the action; and (3) efficiency and the avoidance of waste and the reduction of delay.'" Bank Leumi, 243 N.J. at 227 (quoting DiTrolio v. Antiles, 142 N.J. 253, 267 (1995)). "Notwithstanding those guiding principles, the entire controversy doctrine 'remains an equitable doctrine whose application is left to judicial discretion based on the factual circumstances of individual cases.'" Ibid. (quoting Dimitrakopoulos, 237 N.J. at 114). Thus, trial courts "should not preclude a

38

claim under the entire controversy doctrine if such a remedy would be unfair in the totality of the circumstances and would not promote the doctrine's objectives . . . ." Id. at 227-28 (quoting Dimitrakopoulos, 237 N.J. at 119).

Application of the entire controversy doctrine "does not require commonality of legal issues. Rather, the determinative consideration is whether distinct claims are aspects of a single larger controversy because they arise from interrelated facts." DiTrolio, 142 N.J. at 271. However, "the doctrine 'does not apply to unknown or unaccrued claims'" and fairness in its application "focuses on the litigation posture of the respective parties and whether all of their claims and defenses could be most soundly and appropriately litigated and disposed of in a single comprehensive adjudication." Wadeer, 220 N.J. at 606 (quoting DiTrolio, 142 N.J. at 274, 277).

The doctrine is now codified in Rule 4:30A, which provides:

> Non-joinder of claims required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine, except as otherwise provided by R. 4:64-5 (foreclosure actions) and R. 4:67-4(a) (leave required for counterclaims or cross-claims in summary actions).

Although Rule 4:30A does not require joinder of additional parties, in Cogdell v. Hospital Center at Orange, 116 N.J. 7, 26 (1989), the Court extended the

doctrine to require the mandatory joinder of all parties "who have a material interest in the controversy." Further, Rule 4:5-1(b)(2) requires parties to litigation to disclose the "names of any non-party who should be joined in the action . . . because of potential liability to any party on the basis of the same transactional facts."

Rule 4:5-1(b)(2) further provides that,

> [i]f a party fails to comply with its obligations under this rule, the court may impose an appropriate sanction including dismissal of a successive action against a party whose existence was not disclosed or the imposition on the noncomplying party of litigation expenses that could have been avoided by compliance with this rule. A successive action shall not, however, be dismissed for failure of compliance with this rule unless the failure of compliance was inexcusable and the right of the undisclosed party to defend the successive action has been substantially prejudiced by not having been identified in the prior action.

We review a trial court's decision regarding the application of the entire controversy doctrine for abuse of discretion. Unkert by Unkert v. Gen. Motors Corp., 301 N.J. Super. 583, 595 (App. Div. 1997) (affirming denial of dismissal motion, perceiving "no abuse of the trial court's discretion in not applying the doctrine"). An abuse of discretion "arises when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571

40

(2002) (quoting <u>Achacoso-Sanchez v. Immigr. & Naturalization Serv.</u>, 779 F.2d 1260, 1265 (7th Cir. 1985)).

Guided by these principles, we agree with the judge's ruling dismissing the FAC against Fiberville for failure to state a claim. We also discern no abuse of discretion in the judge's denial of plaintiffs' motion for leave to amend the FAC or the dismissal of plaintiffs' subsequent action against Fiberville on ECD grounds. We do, however, disagree with the judge's dismissal of the FAC without prejudice.

Plaintiffs' initial complaint filed in March 2019 did not list Fiberville as a defendant or assert any claims against Fiberville. Although the FAC which the judge permitted plaintiffs to file on July 9, 2021, added Fiberville as a defendant, none of the counts in the FAC were directed against Fiberville. Following the grant of summary judgment to the CEP defendants on September 23, 2021, plaintiffs moved for leave to file the SAC on October 6, 2021, to add claims against Fiberville for fraud in the inducement (count sixteen), breach of contract and breach of the covenant of good faith and fair dealing (count seventeen), and breach of lease and unlawful self-help (count eighteen). In his supporting certification, plaintiffs' counsel, Michael S. Kimm, provided no reason for not

41

asserting the claims against Fiberville in the FAC. Fiberville opposed the motion to file the SAC and cross-moved to dismiss the FAC.

In denying plaintiffs' motion for leave to amend the FAC, the judge noted that discovery was originally set to end on June 24, 2020, but through "three consent orders and an order permitting [p]laintiffs' former counsel to withdraw, a total of four discovery extensions were granted," extending the discovery end date to April 20, 2021.[6] The judge noted that in seeking to file the FAC, plaintiffs' counsel had "certified that the amendment was precipitated by issues that were discovered during discovery" through depositions and "certain OPRA records obtained from Holland Township after February 2021." According to the judge, "despite the bases cited to the [c]ourt for the amendment as to the newly added defendants, the [c]ertification did not identify that any claims were being asserted against Fiberville and did not identify that any relief was being sought against Fiberville" in the FAC.

To support his rejection of plaintiffs' motion to amend, the judge found that plaintiffs

---

[6] In March 2020, before Fiberville was a named defendant in the FAC, it "produced over 1,000 pages of documents" pursuant to a subpoena by counsel for the CEP defendants. Additionally, both Stanley Sackowitz, Fiberville's consultant, and Harold Bogatz, Esq., "Fiberville's representative," were deposed in November 2020 and January 2021, respectively.

A-3063-21

provided no justification as to why the claims are being asserted now. Plaintiffs claim they were only learned in discovery, though they were known earlier, and discovery ended six months ago. Even if they had been learned in discovery, the claims should have been included when . . . [p]laintiffs moved to file the [FAC].

The judge expounded:

Plaintiffs knew all the facts relied upon to assert the new claims when they filed their [c]omplaint in March 2019 and their [FAC] in July 2021. Plaintiffs chose not to assert these claims against Fiberville, instead focused its claims on the CEP [d]efendants. Now, after the claims against the CEP [d]efendants were dismissed, [p]laintiffs seek another chance by alleging facts known to them for more than two years. Plaintiffs' delay in seeking to assert these claims is prejudicial to Fiberville and is not permitted.

The judge added that "[t]o permit the amendment would bog down judicial administration and economy."

In granting Fiberville's motion to dismiss the FAC under Rule 4:6-2(e) for failure to state a claim, the judge reiterated that the FAC "name[d] Fiberville as a defendant," but "assert[ed] no claims and [sought] no relief against it." However, the judge dismissed the FAC against Fiberville "without prejudice."

When plaintiffs filed a new complaint in a separate action against Fiberville, asserting the same claims contained in the proposed SAC, the judge granted Fiberville's motion to dismiss under Rule 4:6-2(e), dismissing the

43

complaint with prejudice. The judge noted that plaintiffs' claims, "just as the [p]rior [a]ction, arise out of the [l]ease between Fiberville and Mill Road for the Property and the sale of the associated Solar Rights" with the "factual allegations and claims made" being "virtually identical to the factual allegations and causes of action from the [p]rior [a]ction."

The judge determined that "[t]he claims asserted against Fiberville in [the second] action are barred by the [ECD] as these claims arise from the identical transactions and occurrences that formed the basis for the [p]rior [a]ction" and "should have been asserted in the [p]rior [a]ction." The judge explained that the ECD's mandatory joinder requirement "precludes a party in a subsequent lawsuit from asserting a new and independent action for damages," (quoting Vision Mortg. Corp. v. Patricia J. Chiapperini, Inc., 307 N.J. Super. 48, 51 (App. Div. 1997)). Reiterating that the "facts asserted in the [c]omplaint are neither new nor recently discovered" and the "facts and controversy that form the basis of the two actions are identical[,]" the judge dismissed the complaint under the ECD.

The judge also held that the complaint failed to state a claim upon which relief could be granted because plaintiffs could not prove all the elements of the causes of action alleged in the complaint. Regarding the fraud claim, the judge

found that plaintiffs "cannot prove damages as a result of any representations or promises made by Fiberville in connection with the sale of the Solar Rights by clear and convincing evidence."[7]  Instead, as the judge found in the prior action, "the direct and proximate cause of . . . [p]laintiffs' alleged losses, the same losses alleged herein, was their failure to pay rent which led to the default."  Likewise, according to the judge, plaintiffs' breach of contract and breach of the covenant of good faith and fair dealing claims failed because "the cause of [p]laintiffs' loss was the default, and not any purported breach" on Fiberville's part.[8]  Lastly, with respect to plaintiffs' claim for breach of the lease and unlawful removal, the judge found that the lease was properly terminated when plaintiffs failed to cure the default after proper notice was given and voluntarily surrendered the Property to Fiberville in accordance with the lease terms.  Thus, the judge dismissed the entire complaint with prejudice.

---

[7] Plaintiff's fraud claim was based on their allegation that Sackowitz made two factual misrepresentations to induce plaintiffs to acquire the solar rights from Fiberville:  (1) that once plaintiffs acquired the solar rights, "no competitor . . . would be able to 'set up shop'" at the Property; and (2) that the confidentiality provision in the lease would protect "the full scope of the parties' relationship."

[8] The judge also pointed out that plaintiffs' allegations in the new complaint "that Fiberville breached the confidentiality provision in the [l]ease by disclosing terms of the [l]ease and the Solar Rights to the CEP [d]efendants" were directly contradicted by plaintiffs' own statements that they disclosed such information themselves "as early as 2015 to the CEP [d]efendants."

A-3063-21

We discern no abuse of discretion in the judge's rulings denying plaintiffs' motion for leave to file a SAC and dismissing plaintiff's second action against Fiberville with prejudice. We affirm both rulings substantially for the reasons articulated by the judge. Regarding the amendment motion, plaintiffs argue the judge erred in denying them leave to file the SAC because their claims were not futile and the statute of limitations had not yet run. Plaintiffs also assert that Fiberville would not have been prejudiced by the filing of the SAC because it was already a defendant and "could have sought to extend the discovery schedule by motion."

Contrary to plaintiffs' contentions, the record supports the judge's determination that there was no justification for plaintiffs' belated assertion of claims against Fiberville and permitting the late filing would have prejudiced Fiberville. As the judge found, plaintiffs were aware of all the facts relied on in the SAC either when they filed the initial complaint in March 2019, or the FAC in July 2021, after discovery was completed. Indeed, none of the facts alleged by plaintiffs against Fiberville in the SAC were "new or were recently discovered."

Plaintiff's reliance on a statute of limitations argument to support its claim is misguided. Certainly, courts may justify the dismissal of a complaint with

A-3063-21

prejudice on statute of limitations grounds. See Printing Mart, 116 N.J. at 772. But that does not mean that the converse is true, and plaintiffs cite no cases to support their proposition that if the statute of limitations has not expired, a party should be allowed to amend its complaint. Instead, as the judge did here, courts must consider the "two-step process" set forth in Notte: "whether the non-moving party will be prejudiced, and whether granting the amendment would nonetheless be futile." 185 N.J. at 501. The judge's determination that Fiberville would be prejudiced and that the amendment would be futile because the factual allegations failed to demonstrate a legal basis entitling plaintiffs to relief[9] is supported by the record and the law.

As to the dismissal of the second action against Fiberville, plaintiffs argue the ECD is "inapplicable" because it "requires a finding of 'prejudice' that was not found" in the prior action. Plaintiffs further argue that their complaint stated valid claims against Fiberville and should be reinstated because the statute of limitations had not yet run. As to the latter argument, we reiterate our agreement with the judge's ruling that plaintiffs' claims failed as a matter of law. See Sickles v. Cabot Corp., 379 N.J. Super. 100, 106 (App. Div. 2005) ("[A] court

---

[9] In the judge's June 22, 2022 opinion dismissing plaintiffs' second action against Fiberville with prejudice, the judge explained in detail why each of plaintiffs' claims against Fiberville failed.

must dismiss the plaintiff's complaint if it has failed to articulate a legal basis entitling plaintiff to relief."). As to the former, as the judge found, plaintiffs' claims against Fiberville arose out of the same "facts and controversy that form[ed] the basis of" plaintiffs' prior action against the CEP defendants and others. Indeed, by including Fiberville as a defendant in the FAC, plaintiffs were required under Rule 4:30A to assert all known claims against Fiberville arising out of the "interrelated facts" of the "larger controversy . . . ." DiTrolio, 142 N.J. at 271. Plaintiffs chose not to do so, thereby violating the ECD.

Plaintiffs' argument that the ECD is inapplicable because it requires a finding of prejudice appears to be based on the language in Rule 4:5-1(b)(2), which precludes dismissal of a "successive action against a party whose existence was not disclosed" in the first action, as required under the Rule, unless the failure to disclose "was inexcusable and the right of the undisclosed party to defend the successive action has been substantially prejudiced by not having been identified in the prior action." Plaintiffs cite Mitchell v. Charles P. Procini, D.D.S., P.A., 331 N.J. Super. 445, 454 (App. Div. 2000), which addressed "[w]hat constitutes substantial prejudice to a non-disclosed party's ability to defend a successive action under R. 4:5-1(b)(2) . . . ."

However, here, dismissal was not ordered as a sanction for failure to give the required notice under Rule 4:5-1(b)(2) in the first action. Indeed, Fiberville's existence was clearly disclosed during the first action as it was added as a defendant in the FAC. Thus, the limits on dismissal set forth in Rule 4:5-1(b)(2) are inapplicable in these circumstances. In any event, contrary to plaintiffs' contention, the judge found Fiberville was, in fact, prejudiced by plaintiffs' delay in asserting claims against it.

In their reply brief, plaintiffs argue for the first time that the ECD is inapplicable because their two actions were not "successive" but were merely "claims that are pending in different courts at the same time." An argument only raised in the reply brief is deemed waived. L.J. Zucca, Inc. v. Allen Bros. Wholesale Distribs. Inc., 434 N.J. Super. 60, 87 (App. Div. 2014); see also Borough of Berlin v. Remington Vernick Eng'rs, 337 N.J. Super. 590, 596 (App. Div. 2001) ("Raising an issue for the first time in a reply brief is improper.").

Although we need not address the argument due to plaintiffs' waiver, we point out that whether an action is "successive" is relevant only to whether dismissal is warranted for a violation of Rule 4:5-1(b)(2). See, e.g., Alpha Beauty Distribs., Inc. v. Winn-Dixie Stores, Inc., 425 N.J. Super. 94, 101-03 (App. Div. 2012) (addressing separately (1) whether action was "successive"

49

under Rule 4:5-1(b)(2); and (2) after "[f]inding no basis for dismissal based on Rule 4:5-1(b)(2), . . . whether the entire controversy doctrine was breached and required dismissal").

Because Rule 4:5-1(b)(2) is inapplicable here, the only question before the judge was whether the "core set of facts" presented a "single controversy" such that joinder of claims was required under the ECD. Id. at 104 (quoting Hobart Bros. Co. v. Nat'l Union Fire Ins. Co., 354 N.J. Super. 229, 244 (App. Div. 2002; see also The Malaker Corp. Stockholders Prot. Comm. v. First Jersey Nat'l Bank, 163 N.J. Super. 463, 496 (App. Div. 1978)). As previously stated, the judge's determination that plaintiffs' claims against Fiberville encompassed the same core set of facts that gave rise to their claims against the other defendants such that joinder of claims was required under the ECD is amply supported by the record. As such, the judge did not abuse his discretion in dismissing the second action under the ECD.

We also agree that the FAC against Fiberville was properly dismissed under Rule 4:6-2(e). Plaintiffs concede that the FAC did not state any "direct, substantive counts" against Fiberville that would give rise to any of the causes of action plaintiffs later asserted in the SAC. Plaintiffs argue that because Fiberville's "187[-]page submission" in support of its motion to dismiss relied

50

on documents outside the pleadings, the judge should have treated the motion as one for summary judgment under Rule 4:46, and should have denied the motion.

The documents included by Fiberville were the initial complaint, plaintiffs' counsel's certification in support of its motion to amend the complaint, the FAC, a cover letter regarding Fiberville's March 2020 response to a subpoena, the September 23, 2021 orders granting summary judgment to and dismissing the claims against the CEP defendants, and a copy of the relevant lease for the Property. As Fiberville points out, these documents were either public records or documents "referred to, or explicitly relied upon in the [FAC]." See Banco Popular N. Am. v. Gandi, 184 N.J. 161, 183 (2005) ("In evaluating motions to dismiss, courts consider 'allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim.'" (quoting Lum v. Bank of Am., 361 F.3d 217, 222 n.3 (3d Cir. 2004))). Therefore, we discern no error in the judge's dismissal of the FAC under Rule 4:6-2(e).

Fiberville argues that although dismissal of the FAC was appropriate, the judge erred by dismissing without prejudice, instead of with prejudice. A motion to dismiss is "ordinarily" granted "without prejudice." Smith v. SNC Commc'ns Inc., 178 N.J. 265, 282 (2004); see also Printing Mart, 116 N.J. at

772 ("If a complaint must be dismissed after it has been accorded the kind of meticulous and indulgent examination counselled in this opinion, then, barring any other impediment such as a statute of limitations, the dismissal should be without prejudice to a plaintiff's filing of an amended complaint.").

However, "a dismissal with prejudice is 'mandated where the factual allegations are palpably insufficient to support a claim upon which relief can be granted,' . . . or if 'discovery will not give rise to such a claim[.]'" Mac Prop. Grp. LLC v. Selective Fire and Cas. Ins. Co., 473 N.J. Super. 1, 17 (App. Div. 2022) (first quoting Rieder v. State, 221 N.J. Super. 547, 552 (App. Div. 1987); then quoting Dimitrakopoulos, 237 N.J. at 107).

In Nostrame v. Santiago, 213 N.J. 109, 128 (2013), our Supreme Court held that when the complaint's "factual assertions were insufficient on their face to state a claim" and plaintiff "had no further facts to plead, instead filing the complaint in the hope that he could use the tools of discovery to uncover evidence of wrongdoing[,] . . . . dismissal with prejudice was entirely appropriate lest" defendants "be subjected to a mere fishing expedition . . . ." In Johnson v. Glassman, 401 N.J. Super. 222, 247 (App. Div. 2008), we affirmed the dismissal of the complaint with prejudice for failure to state a claim where plaintiffs had already amended their complaint once, "after the lapse of a year,

without adding any material allegations relevant" to the claims against defendants, and had not shown that "provision of a further opportunity to amend" would be "fruitful."

Here, the judge's dismissal of the FAC against Fiberville without prejudice is clearly inconsistent with the denial of plaintiffs' motion for leave to file the SAC as well as the dismissal of plaintiffs' second action against Fiberville with prejudice, both of which we affirm. Because no additional factfinding is necessary, and because remanding this matter to correct the error would only prolong this dispute unnecessarily, we exercise our original jurisdiction in the interest of judicial economy to amend the December 7, 2021 order to provide for dismissal of the FAC against Fiberville with prejudice, consistent with the judge's other rulings. See R. 2:10-5 ("The appellate court may exercise such original jurisdiction as is necessary to the complete determination of any matter on review."); see also Vas v. Roberts, 418 N.J. Super. 509, 523 (App. Div. 2011) ("Resort to original jurisdiction is particularly appropriate to avoid unnecessary further litigation . . . where the record is adequate to terminate the dispute and no further factfinding or administrative expertise or discretion is involved . . . ."). We acknowledge that "the exercise of original jurisdiction should not

occur routinely[.]" Id. at 524. However, "we conclude it is appropriate to do so in this matter." Ibid.

Pure Power and FWH

Plaintiffs argue the judge erred in dismissing their claim against FWH and Pure Power for failure to provide an AOM. According to plaintiffs, because no conference was held on the AOM issue as required by Ferreira v. Rancocas Orthopedic Assocs., 178 N.J. 144, 150-51 (2003), dismissal was unwarranted. Plaintiffs further argue that no AOM was required because the facts of their claim against FWH and Pure Power were "subject to a lay jury's common knowledge."

The Affidavit of Merit Statute (AMS), N.J.S.A. 2A:53A-26 to -29, requires plaintiffs alleging malpractice or negligence against a licensed professional to include an affidavit from an expert in their filing. Cowley v. Virtua Health System, 242 N.J. 1, 8 (2020). Specifically, N.J.S.A. 2A:53A-27 requires a plaintiff in any action for damages resulting from "an alleged act of malpractice or negligence by a licensed person in his profession or occupation" to provide the defendant with "an affidavit of an appropriate licensed person that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the

54

complaint, fell outside acceptable professional or occupational standards or treatment practices." The AOM must be filed within sixty days following the filing of a defendant's answer to the complaint, and the court may upon a showing of good cause grant one additional period of up to sixty days to file it. Ibid. If a plaintiff fails to provide an AOM within the established timeline, "it shall be deemed a failure to state a cause of action." N.J.S.A. 2A:53A-29. Thus, "[t]he failure to deliver a proper [AOM] within the statutory time period requires a dismissal of the complaint with prejudice." Ferreira, 178 N.J. at 146-47.

The purpose of the AMS is to require plaintiffs in negligence actions to "make a threshold showing that their claim is meritorious, in order that meritless lawsuits readily [can] be identified at an early stage of litigation." Alan J. Cornblatt, P.A. v. Barow, 153 N.J. 218, 242 (1997) (quoting In re Petition of Hall, 147 N.J. 379, 391 (1997)). The statute is not concerned with whether a plaintiff can prove the allegations in the complaint, "but with whether there is some objective threshold merit to the allegations." Hubbard ex rel. Hubbard v. Reed, 168 N.J. 387, 394 (2001) (citations omitted). "To demonstrate that objective threshold of merit, the statute requires plaintiffs to provide an expert opinion, given under oath, that a duty of care existed and that the defendant breached that duty." Ibid.

Because the Legislature's intent in enacting the AMS was not to "bar[] meritorious claims brought in good faith," or to "create a minefield of hyper-technicalities in order to doom innocent litigants possessing meritorious claims," Ferreira, 178 N.J. at 150-51 (first quoting Galik v. Clara Maass Med. Ctr., 167 N.J. 341, 359 (2000); then quoting Mayfield v. Cmty. Med. Assocs., P.A., 335 N.J. Super. 198, 209 (App. Div. 2000)), a complaint will not be dismissed with prejudice "if the plaintiff can show that he [or she] has substantially complied with the statute" or if "there are extraordinary circumstances to explain noncompliance." Id. at 151. To that end, in Ferreira, our Supreme Court mandated that "an accelerated case management conference be held within ninety days of the service of an answer in all malpractice actions" in order "[t]o ensure that discovery related issues, such as compliance with the [AMS], do not become sideshows to the primary purpose of the civil justice system—to shepherd legitimate claims expeditiously to trial . . . ." Id. at 154. In Paragon Contractors., Inc. v. Peachtree Condo. Ass'n, 202 N.J. 415, 419 (2010), the Court held that the requirement of a Ferreira conference was "not a tolling device" and, thus, the failure to hold a conference did not "toll[] the filing period provided in" N.J.S.A. 2A:53A-27.

Seven years later, in <u>A.T. v. Cohen</u>, 231 N.J. 337, 348 (2017), the Court clarified that "[o]ur warning in <u>Paragon</u> that the failure to conduct a <u>Ferreira</u> conference would not routinely toll the time for submission of an AOM was not meant to foreclose the finding of extraordinary circumstances when a combination of events occurred." The Court held that "[a]lthough the failure to conduct a <u>Ferreira</u> conference alone may not demonstrate extraordinary circumstances, a confluence of [extraordinary] factors" as found by the Court in <u>A.T.</u> could. <u>Ibid.</u>

<u>A.T.</u> involved a medical malpractice action brought on behalf of a minor child for injuries caused during her birth. <u>Id.</u> at 339. The circumstances deemed "extraordinary" by the Court included not only the failure to schedule a <u>Ferreira</u> conference, but also "[a]n inexperienced practitioner [who] became confused by timelines" and had in fact already obtained an AOM "when defendants filed a motion for summary judgment three days after the time frame for submission of the AOM had expired." <u>Id.</u> at 348-49. The AOM was included with plaintiff's opposition to defendants' summary judgment motion. <u>Id.</u> at 349. The Court determined that accepting the untimely AOM and allowing the case to proceed on the merits would not prejudice defendants. <u>Ibid.</u> Thus, the Court was

"persuaded that equitable relief should be afforded to plaintiff" and reinstated her complaint. Id. at 350.

"[A] plaintiff in a common knowledge malpractice case will not need expert testimony at trial to establish the standard of care or a deviation therefrom." Hubbard, 168 N.J. at 394. Thus, under the "common knowledge" exception, no AOM is required "for cases in which the alleged conduct or failure to act, if accepted as true, would be readily recognizable, by a person of average intelligence, as a failure to exercise the appropriate standard of care." Cowley, 242 N.J. at 8. This exception "applies only when expert testimony is not required to prove a professional defendant's negligence." Ibid. Such cases are "exceptionally rare" and "[t]he common knowledge exception is construed narrowly 'to avoid noncompliance with the [AMS].'" Id. at 17-18 (quoting Hubbard, 168 N.J. at 397). Moreover, as the Cowley Court cautioned, "a jury of laymen cannot be allowed to speculate as to whether the procedure followed by a [defendant professional] conformed to the required professional standards." Id. at 19 (alteration in original) (quoting Schueler v. Strelinger, 43 N.J. 330, 345 (1964)).

Applying these principles, we agree with the judge's ruling dismissing plaintiffs' claims against FWH and Pure Power for failure to provide an AOM.

Count ten of the initial complaint alleged that FWH and Pure Power "breached their professional and ethical duties to [p]laintiffs by selling the engineering site plans and drawings to" the CEP defendants. Count ten further alleged that "Pure Power and FWH . . . converted [p]laintiffs' property by selling the site plans and drawings to" the CEP defendants and plaintiffs "suffered damages as a result of Pure Power's and FWH's breaches of [their] professional and ethical duties."

Both FWH and Pure Power moved to dismiss for failure to state a claim, asserting that plaintiffs had failed to provide the required AOM. In granting both motions, the judge held that N.J.S.A. 2A:53A-27 required plaintiffs to "file and serve" an AOM in connection with their claims against FWH and Pure Power. According to the judge, plaintiffs' assertion that "FWH breached its professional duty by continuing to provide professional engineering service for CEP on the solar project" constitutes "professional malpractice" and "is the exact scenario that is encompassed within the requirement to file an [AOM]."

The judge explained that "[i]n the field of professional engineering, the proper use of, and determination of ownership of particular engineering plans and designs is a complex issue that requires expert opinion and determination, pursuant to the factual circumstances of the individual case." The judge found that plaintiffs' time to file an AOM had expired, as more than "120 days have

passed from the time . . . defendant's answer was filed." The judge concluded that pursuant to N.J.S.A. 2A:53A-29, plaintiffs' complaint "must be dismissed with prejudice."

The judge rejected plaintiffs' claims that they had substantially complied with the AOM requirement or that the "common knowledge" exception to the AOM requirement applied. As to the former, the judge found that "the absence of a Ferreira conference does not toll the running of the statutory period in which an [AOM] should be filed and served on defendants," (citing Paragon Contractors, Inc., 202 N.J. at 419), did not "relieve[]" plaintiffs of their obligation to file an AOM, and did not preclude dismissal of the complaint. The judge attributed "the lack of a Ferreira conference" to plaintiffs' "fail[ure] to designate the cause of action as professional malpractice at the outset."

As to the latter, the judge explained that because "[t]he proper use, ownership, employment or other derivative utilization of engineering plans or designs is not a simple matter of contract, but rather involves determinations of professional responsibility and a standard of care employed in conformance therewith," the common knowledge exception to the AOM requirement did not apply. According to the judge, instead, "it is a matter which must be substantiated, as a threshold matter, by an [AOM]."

Plaintiffs rely on A.T. to support their argument that dismissal of their claim against Pure Power and FWH should be reversed because no Ferreira conference was conducted. However, the "confluence" of extraordinary factors present in A.T. are clearly absent here. 231 N.J. at 348. Critically, the plaintiff in A.T. produced an AOM a few days late, id. at 349, while plaintiffs here have still failed to produce an AOM to support their claims. Moreover, plaintiffs rely solely on the failure to hold a Ferreira conference, which the A.T. Court expressly held was insufficient to preclude dismissal. Id. at 348.

Equally unavailing is plaintiffs' assertion that the common knowledge exception applies. Plaintiffs claim their allegations against FWH and Pure Power "were well within the common knowledge of lay jurors as they were charged essentially with theft of clients' assets, i.e., the drawings, schematics, and related work papers and data contained within plaintiffs' client files." On the contrary, plaintiffs' complaint specified that FWH and Pure Power "breached their professional and ethical duties to [p]laintiffs" by the alleged theft. As the Cowley Court held, speculation about "professional standards" is plainly not allowed. 242 N.J. at 19.

Plaintiffs argue that their claims against "nominal defendants" Holland Township and NJR should be reinstated. Plaintiffs allege no actual error by the judge in dismissing either Holland Township or NJR, asserting only that reinstatement of those defendants should occur once plaintiffs succeed in their appeal of the judge's rulings regarding the CEP defendants, Fiberville, Pure Power and FWH. Based on our decision regarding those defendants, we need not consider these claims.

## NJR

In its cross-appeal in A-3063-21, NJR asserts that the judge abused his discretion by denying its motion for sanctions against plaintiffs for their refusal to withdraw their motion for a default judgment against NJR. NJR contends that there was no rational basis to deny sanctions and the judge "appears to have mistaken NJR's motion for monetary sanctions as a motion to hold [plaintiffs] in contempt."

Less than one month after NJR's dismissal from the action for plaintiffs' failure to prosecute, plaintiffs moved for a default judgment against NJR. In support, plaintiffs submitted a certification by their counsel, Kimm, stating that NJR had been served on August 12, 2021, "by serving their general counsel

Mark Bellin at their joint offices." That same day, plaintiffs filed another certification by Kimm "in Support of Plaintiff's Motion to Reinstate Action," asserting that the court's dismissal of NJR was in error because NJR had been served through Bellin. Despite filing the certification, plaintiffs never actually filed a motion to reinstate the action against NJR as the judge had directed in his January 28, 2022, order.

In a March 9, 2022 letter, counsel for NJR "provide[d n]otice" to Kimm that plaintiffs' motion for default violated <u>Rule</u> 1:4-8 and demanded that the motion be withdrawn. In the letter, NJR's counsel informed Kimm that NJR had been dismissed from the case in the January 28, 2022 order, and that NJR had never been lawfully served as the address on the proof of service attached to Kimm's certification was incorrect and Bellin had never served as counsel to NJR. The letter further indicated that if the motion was not withdrawn within twenty-eight days, NJR intended to seek sanctions under <u>Rule</u> 1:4-8(b). After receiving no response, NJR's counsel emailed Kimm on March 21, 2022, attaching a copy of the March 9 letter and requesting a response by the following day. NJR's counsel certified that Kimm never responded. As a result, on March 24, 2022, NJR cross-moved for sanctions against plaintiffs and Kimm under <u>Rule</u> 1:4-8.

Plaintiffs opposed NJR's cross-motion and filed another certification by Kimm asserting that he did not respond to NJR because he was on trial at the time. Kimm also averred that "no one from NJR or Mark Bellin, Esq., ha[d] supplied any certification to dispute the allegedly incorrect facts" about service of the FAC on NJR. Kimm further explained that his process server was initially instructed

> to serve [NJR] at the address listed on the amended service filed 7/19/2021, 1415 Wyckoff Road, Wall, NJ 07719, but I was later advised by my staff that no one was allowed into that building and that they had been instructed to serve papers at 54 Broad Street, Suite 303, Red Bank. This was curious, so I went to Red Bank personally with two sets of papers; went to Suite 303; and handed the two sets to the assistant of Mark Bellin, Esq. She courteously stated that she would provide the documents to Mr. Bellin. After August 13, 2021, no one including Mr. Bellin informed me by email, phone call, letter, or otherwise that NJR was not at that address or that the process served on August 13, 2021, had not been provided to NJR.

Kimm's certification did not address the fact that NJR had already been dismissed from the case.

In denying NJR's cross-motion for sanctions, although the judge labelled the motion as "NJR's Motion to Hold in Contempt," the judge evaluated the motion under Rule 1:4-8, pursuant to which "[a]ny paper or motion that is filed frivolously subjects that party's counsel to sanctions." The judge concluded that

64

"[p]laintiffs actions [did] not rise to the level of frivolousness that would lead th[e c]ourt to grant NJR's motion."

The standard governing a <u>Rule</u> 1:4-8 motion for sanctions is well settled.

> "A court may impose sanctions upon an attorney if the attorney files a [frivolous pleading] . . . and fails to withdraw the paper within twenty-eight days of service of a demand for its withdrawal." <u>United Hearts, L.L.C. v. Zahabian</u>, 407 N.J. Super. 379, 389 (App. Div.) (citing <u>R.</u> 1:4-8(b)(1)), <u>certif. denied</u>, 200 N.J. 367 (2009).
>
> <u>Rule</u> 1:4-8 supplements N.J.S.A. 2A:15-59.1, which permits the trial judge to award:
>
>> all reasonable litigation costs and reasonable attorney fees, if the judge finds at any time during the proceedings or upon judgment that a complaint, counterclaim, cross-claim or defense of the nonprevailing person was frivolous.
>
>> [N.J.S.A. 2A:15-59.1(a)(1).]
>
> [<u>McDaniel v. Man Wai Lee</u>, 419 N.J. Super. 482, 498 (App. Div. 2011) (citations reformatted).]

"'[T]he term "frivolous" should be given a restrictive interpretation' to avoid limiting access to the court system." <u>First Atl. Fed. Credit Union v. Perez</u>, 391 N.J. Super. 419, 433 (App. Div. 2007) (quoting <u>McKeown Brand v. Trump Castle Hotel & Casino</u>, 132 N.J. 546, 561-62 (1993)). "For purposes of imposing sanctions under <u>Rule</u> 1:4-8, an assertion is deemed 'frivolous' when

'no rational argument can be advanced in its support, or it is not supported by any credible evidence, or it is completely untenable.'" Bove v. AkPharma Inc., 460 N.J. Super. 123, 148 (App. Div. 2019) (quoting United Hearts, LLC, 407 N.J. Super. at 389). "[B]ecause the nature of litigation conduct warranting sanctions under Rule 1:4-8 has been strictly construed," such "sanctions will not be imposed against an attorney who mistakenly files a claim in good faith." Ibid. (citing Pressler & Verniero, Current N.J. Court Rules, cmt. 2 on R. 1:4-8 (2019); Horowitz v. Weishoff, 346 N.J. Super. 165, 166-67 (App. Div. 2001)). A trial judge's decision on a Rule 1:4–8 motion "is addressed to the judge's sound discretion . . . ." McDaniel, 419 N.J. Super. at 498.

Guided by these principles, we discern no abuse of discretion in the judge's denial of NJR's motion for sanctions. NJR argues the judge's reference to "contempt" in denying the motion for sanctions demonstrates that the judge's decision was "based upon consideration of irrelevant or inappropriate factors." On the contrary, the judge clearly relied on Rule 1:4-8 in evaluating the motion and correctly described the legal standard for determining when an assertion is deemed "frivolous" for purposes of the Rule.

NJR further asserts there was no rational basis for the judge to deny the motion. Although plaintiffs' actions were clearly erroneous in that they did not

comply with the judge's directive to file a formal motion to reinstate the claim against NJR and did not properly serve NJR, Kimm provided a certification explaining how and why he attempted to serve NJR at Bellin's address. Thus, we discern no abuse of discretion in the judge concluding that Kimm's actions, while mistaken, were not taken in bad faith.

In sum, we reject all of plaintiffs' arguments on appeal and affirm the judge's corresponding rulings. We also reject NJR's argument in its cross-appeal and affirm the judge's decision denying sanctions. However, we agree with Fiberville's argument in its cross-appeal that the motion to dismiss the FAC as to Fiberville should have been with prejudice and amend the December 7, 2021 order accordingly.

Affirmed in part, reversed in part. The December 7, 2021 order dismissing the FAC against Fiberville without prejudice is amended in accordance with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-3063-21